## ROCKLAND & ROCKPORT LIME CORPORATION v. HAM, Collector of Internal Revenue.
### No. 148.

District Court, D. Maine, S. D.

Feb. 21, 1930.

Verrill, Hale, Booth & Ives, of Portland, Me., and Robert H. Holt, of Boston, Mass., for plaintiff.

John W. Hussey, of Washington, D. C., and F. R. Dyer, U. S. Atty., and William B. Nulty, Asst. U. S. Atty., both of Portland, Me., for defendant.

PETERS, District Judge.

This case was heard by me without a jury, a stipulation having been filed by which the essential facts were presented by agreement and a jury waived.

The suit is brought to recover taxes alleged to have been erroneously and illegally collected by the defendant, a collector of internal revenue. On March 7, 1924, the plaintiff, as successor to the Rockland & Rockport Lime Company, paid to the defendant after demand $130,456.53, of which $115,414.44 was for excess profits taxes, and $15,042.09 income taxes, for the year 1917. These amounts were paid by the plaintiff by virtue of an agreement with the Rockland & Rockport Lime Company, whose business and assets it had taken over, and whose debts it had agreed to pay. No question is made as to the right of the plaintiff to bring the suit instead of its predecessor in title.

The plaintiff seeks to recover the amounts paid by it for its predecessor, for the excess profits taxes and the income taxes above mentioned, on the ground that the taxes were collected after the expiration of the periods of limitation applicable and in force at the time of their collection. The plaintiff makes no claim that the taxes were not properly computed, nor that the amounts involved were in excess of what was properly due for the year 1917.

The defendant contends that, as to the excess profits taxes involved, they were not paid after the limitation period had expired, and as to the income taxes involved, while conceding that the five-year limitation period had expired before their payment, relies upon section 611 of the Revenue Act of 1928 (26 USCA § 2611) as precluding the recovery sought for in this action.

The plaintiff's predecessor filed its income tax return for the year 1917 on form 1031, on March 29, 1918, and accompanied the return by a statement, to the effect that it had not included the price received by it for the sale of its fleet during the year, some $745,000, but had carried to a reserve account the difference between the cost price of the vessels, less a fair depreciation, and the net receipts from the sale, to be used in providing a new fleet; it being the position of the company "that the amount represented by this reserve is not taxable income within the meaning of the law; and for the reasons

stated above, there being no net income, no return is made on Form 1103."

On June 23, 1920, plaintiff's predecessor filed its first excess profits tax return for 1917, on form 1103, as required by the Revenue Act of October 3, 1917 (40 Stat. 300), and at the same time filed an amended income tax return for that year on form 1031.

The first assessment of taxes of any kind for the year 1917 was made against the company in January, 1921, in the amount of $78,628.89, and plaintiff's predecessor, after receiving a demand from the collector, filed a claim for an abatement for the full amount of the assessment, and no attempt was made by the collector to collect the taxes until after the claim for abatement had been disallowed. While the claim for abatement was pending, the plaintiff's predecessor entered into an agreement with the Commissioner of Internal Revenue by which consent was given to the determination of the assessment and collection of the taxes for the year 1917 at any time within one year after March 1, 1923. The claim for abatement was disallowed on December 19, 1923, and an additional profits tax was assessed about February 1, 1924. The payments made by the plaintiff on March 7, 1924, which it seeks to recover, were obviously made more than five years after the filing of the first income tax return and within five years from the filing of the first excess profits tax return as such on the forms provided for the purpose by the Commission and called for by his regulations.

■ The plaintiff claims that the statute of limitations relating to the excess profits tax began in March, 1918, on the date of the filing of the first income tax return on form 1031, because attached to that form was a statement showing receipts from sales of vessels in the year 1917, which receipts were the basis of the excess profits tax subsequently assessed; and that the excess profits tax return filed on June 23, 1920, was simply an amendment of a return previously filed; and that, even as extended by the waiver, the limitation periods as to both taxes expired March 1, 1924, one week prior to the date of the collections complained of.

The first question to be determined is whether the period of limitation in respect of the excess profits taxes began to run in March, 1918, or in June, 1920.

The tax return filed by the plaintiff in March, 1918, purported to be an income tax return and nothing else. In a supplementary note or rider it gave data concerning the sales of certain vessels, but not sufficiently complete to enable the Commissioner to assess an excess profits tax. The return was made on form 1031, whereas the Commissioner, under authority given him by law, required that the return of excess profits taxes be on form 1103. No contention is made that the plaintiff's predecessor filed a false or fraudulent return with intent to evade the tax, but it does seem clear that it did fail to file the required return for excess profits tax purposes until June 23, 1920.

The defendant concedes that the filing of an amended return does not affect the running of the statute of limitations, which should start with the original return; but contends that the only amended return here was the amended income tax return, and that the excess profits tax return filed on June 23, 1920, was the original return of that character; and that seems to me to be the case.

It was said by the court in the case of Beam v. Hamilton (C. C. A.) 289 F. 9, 14, that, "not only was the excess profits tax a separate, distinct, and then novel source of revenue, but the statute and regulations, as we have above shown, in express and formal terms required separate and distinct returns thereof, and we think it clear that failure to make a separate return of excess profits tax is none the less a failure to make the return contemplated by the statute because of the mere fact that the computations on the excess profits return are to be carried onto Form 1040."

■ Even if the note attached to the income tax return of March, 1918, had been fuller in detail, it was not the tax return required by law. The government loses no right to collection unless expressly so provided by statute. The statute relied upon to bar the government's right is section 250(d) of the Revenue Act of 1921 (42 Stat. 265), and this provides, among other things, in addition to fixing the limitation periods, that, "in the case * * * of a *failure to file a required return*, the amount of tax due may be determined, assessed, and collected, and a suit or proceeding for the collection of such amount may be begun, at any time after it becomes due. * *. * "

As said in United States v. Updike (D. C.) 1 F.(2d) 550, 556, affirmed (C. C. A.) 8 F.(2d) 913, certiorari denied 271 U. S. 661, 46 S. Ct. 473, 70 L. Ed. 1138: "Under each income tax law there are regulations promulgated to carry out that law, and then blank forms of return are prepared to meet the requirements of each particular law. These blank forms are submitted to the taxpayer,

to be filled out and verified by him, and when he has filled out the blank, added the verification, and delivered the document to the proper officer, then the taxpayer is said to have made and filed return under the designated law. And the plain meaning of Congress in section 250(d) is that such a making and filing of return under any one of the revenue acts will start the statute in favor of the taxpayer and against the government. There is nothing in the statute to imply that anything other than such making of return under the particular act would set the statute in motion."

If the statute did not start to run until June, 1920, the five-year limitation period did not expire until after the plaintiff made its payment, and it was properly made.

■ However, even if the payment of both excess profits taxes and the income taxes for 1917, which were paid on March 7, 1924, are held to have been made after the expiration of the applicable period of limitation, the defendant contends that no recovery could be had because the matter is wholly governed by sections 607 and 611 of the Revenue Act of 1928 (26 USCA §§ 2607, 2611). These two sections taken together, leaving out language not applicable, provide in substance that a tax, though properly assessed, paid after the expiration of the limitation period, may be recovered back by the taxpayer, except in one particular situation, and that is where the assessment was made within the proper period, prior to June 2, 1924, and a claim for abatement filed and collection of the tax stayed.

The objection raised by the plaintiff to the application of section 611 (26 USCA § 2611) is that in this case taxes were not "stayed." It is stipulated that the assessment was made within the proper period prior to June 2, 1924, and that the claim of abatement was filed, and also that, upon receipt of that claim, the collector of internal revenue did not proceed to enforce collection of the taxes. It is apparent that the collector withheld or delayed the collection of the taxes, and the question is whether that nonaction or delay is covered by the word "stayed," as used in the statute. If, when the collection was thus delayed, the "collection was stayed" within the meaning of the statute, then the plaintiff comes within the exception provided by section 611 (26 USCA § 2611) and cannot recover.

It has been contended in this and other cases previously litigated that the word "stay" in this connection refers to a legal or compulsory stay of the proceedings, but I consider the weight of both reason and authority to be in support of the contention that the word "stay," as used in section 611, should be construed as applicable to these cases in which the filing of the claim for abatement had, *in fact*, resulted in an administrative delay in collecting duly assessed taxes, even though no formal stay had been granted. It was so considered by Judge Mack in the case of Regla Coal Co. v. Bowers (D. C.) 37 F.(2d) 373, a recent case in the Southern District of New York. More recently in the case of Oak Worsted Mills v. U. S., 36 F.(2d) 529, 533, considered by the Court of Claims, opinion of December 2, 1929, the Court of Claims considered sections 607 and 611 (26 USCA §§ 2607, 2611) together and says that: "Read together these sections provide that taxes assessed or paid out of time shall be credited or refunded to the taxpayer if a timely refund claim is filed *except* in cases of timely assessment made before June 2, 1924, and a claim in abatement was filed and collection of any part of the tax was stayed." And the court there reaches the conclusion that the word "stayed" was not used in its technical or legal sense, but concludes that the government under the statute may retain the tax in those cases where, as a favor to the taxpayer, the government had permitted the filing of a claim for abatement and collection had been stayed; or, in other words, in those cases where the taxpayer, by filing a claim for abatement, had succeeded in delaying the case over the period of limitation, and then sought to take advantage of the favor that had been granted him.

This question was again considered by the Circuit Court of Appeals in the Ninth Circuit, in the case of Goodcell v. Graham, 35 F.(2d) 586, in which it emphasized and reasserted the same conclusion it had reached in the previous case of Huntley v. Gile (C. C. A.) 32 F.(2d) 857.

■ The plaintiff also contends that the statute as above construed deprives it of its property rights in violation of the federal Constitution. I do not feel that it is expedient to go into this question more than to say that no one has a vested right to rely upon the statute of limitation to defeat a debt or other personal obligation. The Legislature which gives the right may take it away, even after the bar has become complete. Campbell v. Holt, 115 U. S. 621, 6 S. Ct. 209, 29 L. Ed. 483.

It follows that the plaintiff is not permitted by statute to recover the money it has paid the defendant for its duly assessed taxes, and judgment is rendered for the defendant with costs.