## McDONNELL et al. v. UNITED STATES.
### No. L-14.

Court of Claims.
May 31, 1932.

Plaintiffs sue to recover $29,748.40 with interest from September 29, 1926, being the total excess profits tax paid by the partnership of McDonnell & Truda for the calendar year 1917.

They contend, first, that the partnership had no invested capital, or not more than a nominal capital, and that the tax should have been assessed at 8 per cent. under section 209 of the Revenue Act of 1917 (40 Stat. 307);

and, secondly, that the tax in question was collected after the expiration of the statute of limitations.

The position of the defendant is, first, that the partnership had more than a nominal invested capital, and that the tax in question was correct in amount; and, second, that collection thereof was not barred since the partnership did not file an excess-profits tax return, form 1102.

### Special Findings of Fact.

1. During 1917 plaintiffs were members of the partnership of McDonnell & Truda, organized in New York in 1915 and dissolved July 1, 1928. There were no other partners. In the early part of 1915 plaintiffs were informed that the steamship company Transatlantica Italiana was considering a change in its New York agency. They agreed that, in the event they could obtain that agency, they would form a partnership to act as agents for that company and other steamship companies whose representation they might subsequently obtain. Truda thereupon went to Genoa, and, as a result of negotiations extending through a period of about two months, secured a contract appointing McDonnell and himself general agents for cargo and passengers for the United States and Canada for Transatlantica Italiana for one year beginning September 1, 1915.

Before the expiration of this contract, a second general agency agreement was entered into, effective from September 1, 1916, until December 31, 1918, and renewable each three years thereafter unless canceled by either party three months before the expiration date of any contract period.

2. The plaintiffs' general agency contract with the Transatlantica Italiana required them to maintain suitable offices in the ports in which the steamers of the Transatlantica Italiana made regular calls and to staff such offices with such a number of employees as was necessary for the complete and quick handling of the steamship company's business. It authorized them to appoint agents and subagents, and required them to maintain one or more special employees to visit the subagents to aid and encourage the solicitation of traffic for the steamship company; to receive and deliver cargo in accordance with the instructions of the Transatlantica Italiana; to issue bills of lading for the captains of the steamers of the company; to collect and pay freight; to make collections and disbursements; to pay for the expenses authorized by the general offices; to generally take care of all of the

interests of the steamship company in the United States and Canada in the most suitable and diligent manner; and to promptly remit to the Transatlantica Italiana at Genoa all amounts collected by them for the steamship company, less deductions and payments made for account of the company, in consideration of which the plaintiffs were to receive certain fixed commissions on freight and passengers handled for the company. Ordinarily, the expenses of stevedoring, port taxes, brokerage to shippers, piloting, tug service, the plaintiffs' commissions, and other incidental expenses were deducted from the gross revenue and the approximate balance cabled to the company in Italy. A small amount was retained by the plaintiffs as an account current to cover any bills which might be presented after the steamers had sailed.

3. Upon organization McDonnell placed $5,000 to the credit of the partnership, and that amount was repaid to him a short time thereafter. The partnership conducted its business upon its earned commissions, current and accumulated profits, and borrowed money. No cash advances were made to the partnership by the Transatlantica Italiana.

4. The calendar year 1917 is the taxable year involved herein. The partnership's balance sheet for 1917 under the heading "Liabilities and Capital" shows the following:

| | Jan. 1, 1917 | Dec. 31, 1917 |
|---|---|---|
| Peter McDonnell, capital | $43,727.08 | $116,690.23 |
| Dominic A. Truda, capital | 33,464.31 | 94,135.02 |

Under the heading "Explanation of balance sheet items," each of the above items is described as "Capital account of partner."

The partnership's gross income from all sources for 1917 was $390,272.04, and its net book income was $129,253.82.

5. A. J. McDonnell, brother of Peter L. McDonnell, was employed by the partnership throughout the year 1917, and was in charge of that department of the business which had to do with shipments of freight. Large quantities of war materials were being exported at that time, and such shipments constituted a substantial portion of the business done. Much effort was required to secure it and much attention was required in looking after it. His compensation was determined by the plaintiffs at the end of the year. During the year 1917 he received as his compensation approximately 32 per cent. of the partnership's net income.

H. B. Walker, another experienced freight man, received $25,000 from the partnership for his services in connection with the operation of the American side of the plaintiffs' business.

During the year 1917 Hugo Strada received $10,000 from the copartnership for similar services performed during that same year, and the La Mediterranea Steamship Company, of Italy, which solicited freight and passengers and performed other services in connection with the European end of the plaintiffs' business, was paid $25,000. As in the case of A. J. McDonnell, neither H. B. Walker, Hugo Strada, nor the La Mediterranea Steamship Company had any definite arrangement with the partnership for the compensation which they were to receive for their services, but were paid amounts which the plaintiffs considered to be commensurate with the services performed by them and the earnings which resulted from their services. All such payments were made by the plaintiffs out of current and accrued earnings.

6. In 1916 the plaintiffs, with A. J. McDonnell, organized a corporation known as the Maru Navigation Company with an authorized capital stock of $100,000 for the purpose of purchasing and operating ships. The corporation remained simply a skeleton, no money being paid in and no stock being subscribed for until August 1, 1917, at which time A. J. McDonnell subscribed for $33,000 of stock, and November 3, 1917, Truda subscribed for $33,000; Peter L. McDonnell subscribed for the remaining authorized stock of $34,000. The amounts paid by the three individuals for stock in the Navigation Company were actually paid from accumulated profits of the partnership, and were charged by it to the individual accounts of A. J. and Peter L. McDonnell, and Truda.

7. In March, 1917, the partnership purchased the steamship St. Charles for $340,000 and paid cash therefor. Interest, commissions, repairs, betterments, supplies, etc., ultimately brought the cost of the ship to $381,747.44. March 31, 1917, the partnership borrowed $250,000 to pay for the steamship. The balance of the purchase price and the other expenditures made in connection with the ship, as hereinafter related, was paid out of partnership funds, representing accumulated and current profits. The $250,000 loan secured from the partnership's New York bank was repaid August 10, 1917.

July 18, 1917, the partnership sold the S. S. St. Charles to the Maru Navigation Company on credit, without interest, at a net profit to the partnership of $8,623.68. June 30, 1918, the partnership received 3,500

shares of stock of the Maru Navigation Company of a par value of $350,000 in payment of the purchase price off the ship. The record does not show that the issue of 3,500 shares of stock of the Maru Navigation Company was an authorized issue.

After March 18, 1917, the partnership performed services for the Maru Navigation Company similar to those performed by it for the Transatlantica Italiana. The partnership did not operate the S. S. St. Charles during its ownership of the ship, and did not operate any other boat during the year 1917.

8. Approximately 97½ per cent. of the gross income of the partnership for 1917 was derived from freight and passenger commissions, including those of the S. S. St. Charles; the partnership, however, had a total of $544,780.57 invested in securities and in the S. S. St. Charles in 1917. An analysis of the income for 1917 shows the following:

#### Income

Passenger and freight commissions:

| | |
|---|---|
| S. S. St. Charles | $ 60,089.01 |
| S. S. Tyler | 111,362.62 |
| Vigo S. S. Co | 93,394.22 |
| Transatlantica Italiana | 115,561.78 |
| Fees for entering and clearing steamers | 160.00 |
| Total gross income from services | $380,567.63 |

Miscellaneous income:

| | |
|---|---|
| Interest on deposits | 394.87 |
| Dividends on stock of domestic corporations | 5,990.00 |
| Profits on sales | 3,319.54 |
| Total gross income other than from service | 9,704.41 |
| Total gross income from all sources | 390,272.04 |

#### Expenses

| | |
|---|---|
| Telegrams and cable | 237.99 |
| Claims | 2,072.05 |
| Legal | 3,204.21 |
| Contributions | 3,947.00 |
| Rent | 2,853.80 |
| Advertising | 1,431.44 |
| Entertainment and traveling | 11,095.62 |
| Telephone | 921.74 |
| Dues | 259.25 |
| Stationery | 1,054.78 |
| Compensation of employees | 102,398.51 |
| Compensation of partners | 50,000.00 |
| Expense of handling moving-picture films | 605.16 |
| Payment in settlement of suit for negligence | 10,000.00 |
| Compensation and commission for services rendered in procuring and handling cargo and steamships | 55,000.00 |
| Miscellaneous | 5,453.15 |
| Depreciation of furniture and fixtures | 286.67 |
| Total expense | 250,821.37 |
| Net taxable income | 139,450.67 |
| Reserve for partnership excess-profits tax | 10,196.85 |
| Net book income | 129,253.82 |

The profit of $3,319.54 on sales, forming a part of the gross income tabulated above, was as follows:

| Assets | Acquired | Cost | Proceeds |
|---|---|---|---|
| 500 shares Railway Steel Spring | Nov. 25, 1916 | $30,250.00 | $23,605.00 |
| 500 shares U. S. Steel | Jan. 12, 1917 | 54,983.13 | 57,265.00 |
| S. S. St. Charles | Mar. 31, 1917 | 382,047.44 | 389,730.11 |
| | | 467,280.57 | 470,600.11 |
| Net profit | | 3,319.54 | |

9. On March 29, 1918, the partnership filed an information return, form 1065, of its income for the calendar year 1917, showing an excess profits tax liability under item J of $10,196.85, which amount was paid June 4, 1918. No excess profits tax return was filed by the partnership for 1917 on government form 1102.

Item 2 of the general instructions on the excess profits tax return, form 1102, required to be filed by partnerships for 1917, provides: "Who Must Make a Return on Form 1102.—Every partnership having for the taxable year a net income of $6,000 or more (see Form 1065) must make a return on this form of its average invested capital during the taxable year, and compute the amount of its excess-profits tax, if any, as directed herein, unless it has no invested capital and therefore is authorized to compute its tax on Form 1065."

In Schedule C of the return form 1065, the profit on the sale of the S. S. St. Charles and the stocks set out in finding 8 were reported. A statement attached to the return stated the following:

"Explanation of deductions: The partnership of McDonnell and Truda is engaged in steamship passenger and freight bookings for various clients. For the performance of such services it receives commissions on the gross business. It had no invested capital at the beginning of the taxable year except the amount expended to equip an office.

"At the end of the taxable year it had assets and liabilities as follows:

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | $225,913.93 | Accts. payable | $416,632.51 |
| Furniture and fixtures | 2,580.04 | | |
| Liberty bonds | 75,000.00 | | |
| Stocks (domestic corporations) | 2,500.00 | | |
| Accounts receivable | 321,463.79 | | |
| Total | 627,457.76 | | 416,632.51 |

"After liquidation of liabilities the remaining assets consisting of earned profits have been placed to the credit of each individual partner's account according to division of profits, subject to withdrawal at any time.

10. The invested capital of the partnership of McDonnell & Truda for 1917 was more than nominal. The Commissioner, through his agents, made an examination and investigation of the books of account of the partnership, and on March 18, 1923, determined an additional excess profits tax liability of $100,005.14, and made a jeopardy assessment thereof against the partnership. April 4, 1923, notice and demand for payment of this additional profits tax for 1917 was sent to the partnership, and on April 5, 1923, it filed a claim for the abatement of the assessment, upon the ground, among others, that for 1917 the partnership had no invested capital, or not more than a nominal capital, and its profits tax should be assessed at the 8 per cent. rate under the provisions of section 209 of the Revenue Act of 1917. All issues raised by the partnership were conceded by the Income Tax Unit, except the claim for assessment at 8 per cent. under section 209, and, in February, 1924, the partnership having noted an appeal to the Commissioner of Internal Revenue, the case was transmitted by the Income·Tax Unit to the Committee on Appeals and Review.

In its appeal, dated March 21, 1924, to the Committee on Appeals and Review, the partnership stated:

"In order to have all claims before the committee which may at any time be raised, as required by Treasury Decision 3492, dated June 16, 1923, issued subsequent to the date of the brief, a formal appeal is hereby made for assessment under section 210 of the Revenue Act of 1917 (40 Stat. 307) in the event that assessment under section 209 of the Revenue Act of 1917 is finally disallowed. This request is made not because it is conceded that we are not entitled to assessment under section 209 but to preserve our rights in this respect in case your decision is adverse to us."

11. The claim of the partnership that it had only a nominal capital, and that its profits tax should be assessed at 8 per cent. under section 209 of the Revenue Act of 1917, was disallowed, but as a result of the appeal, the Committee on Appeals and Review recommended that the profits tax for 1917 be determined and computed under the relief provisions of section 210 of the Revenue Act of 1917. Pursuant thereto a computation of the profits tax under special relief section 210

was made showing an additional profits tax liability of $24,863.28 and an overassessment in the amount of $75,141.86.

12. On December 17, 1925, the assistant to the Commissioner wrote the partnership, as follows:

"Receipt is acknowledged of your letter dated December 10, 1925, wherein you state that a letter has not yet been received by you showing the amount of income and excess-profits tax finally determined to be due for the year 1917, and requesting that this letter be forwarded before compliance with the request of this office in bureau letters dated November 30, 1925, that waivers be furnished for the partners, Peter L. McDonnell and Dominic A. Truda.

"In the letters to Peter L. McDonnell and Dominic A. Truda mentioned above they were advised that an audit of the partnership of McDonnell and Truda under section 210 of the Revenue Act of 1917 resulted in the determination of an overassessment of $75,141.86.

"The audit of the partnership can not be completed and no further action can be taken until waivers are on file for Peter L. McDonnell and Dominic A. Truda. When these waivers are received properly signed, a letter will be issued to you showing the computations of the tax resulting in the above overassessment."

13. February 12, 1926, identical letters affecting their individual tax liabilities were mailed to Peter L. McDonnell and D. A. Truda by the assistant to the Commissioner, as follows:

"Reference is made to bureau letter dated November 30, 1925, wherein you were advised that an audit of your income-tax return for the year 1917 resulted in the determination of a deficiency in tax of $6,877.62 due to assessment under the provisions of section 210 of the Revenue Act of 1917 of the partnership of McDonnell and Truda, of which you are a partner, and requesting you to execute a waiver which was enclosed for the purpose, in order that adjustment could be made of the overassessment of $75,141.86 determined for the partnership.

"Under date of December 17, 1925, in reply to a letter from the above-named partnership dated December 10, 1925, the partnership was advised that no further action would be taken until waivers are on file from you and your partner, Mr. Dominic A. Truda.

"You are, therefore, requested to execute and return to this office, the inclosed form of

waiver within fifteen days from the date of this letter in order that adjustment of the partnership's overassessment and your resulting additional tax liability may be made."

14. May 22, 1926, both partners having previously filed waivers of the statute of limitations applicable to them as individuals, the Commissioner of Internal Revenue rendered his decision with respect to the profits tax liability of the partnership for 1917, and mailed to the partnership a letter advising it that final determination of the deficiency had been made under section 210, and that the outstanding assessment of $100,005.14 had been reduced to $24,863.28. A certificate of overassessment in the amount of $75,141.86 was issued by the Commissioner to the partnership July 20, 1926.

May 24, 1926, the partnership filed a written waiver of its right to file a petition with the United States Board of Tax Appeals with reference to the deficiency of $24,863.28. Thereafter, on September 29, 1926, this deficiency, together with interest thereon in the amount of $4,885.12, was paid to the collector of internal revenue for the second New York collection district.

15. Refund claims were timely filed on the ground that the partnership had properly filed a return for the calendar year 1917, and that the commissioner's action in collecting the additional tax was erroneous, as no additional tax was due, and that the collection of additional tax and interest totaling $29,748.-40 for the calendar year 1917 was made after the expiration of the statute of limitations and after the liability for the tax had been extinguished.

These claims for refund were disallowed by the Commissioner, November 7, 1928, and September 9, 1929. The Commissioner held that the partnership was required to file an excess profits tax return, form 1102, and, having failed to do so, the statute of limitation did not run against assessment and collection; that the information return of income, form 1065, filed by the partnership, was not a sufficient compliance with the statute and regulations, and the profits tax could not be accurately computed from information incorporated in or accompanying that return; balance sheets alone not being sufficient from which to determine invested capital.

Robert Ash, of Washington, D. C., for plaintiffs.

J. W. Hussey, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

This suit was instituted by the former partners of the dissolved partnership of McDonnell & Truda to recover $29,748.40, being excess profits tax of $24,863.28 for the calendar year, and interest of $4,885.12 thereon paid September 29, 1926. Refund claims were timely filed and were rejected within two years immediately preceding institution of this suit. It is alleged that the tax and interest were collected after the expiration of the statute of limitation of five years, and this contention is predicated upon the claim that the partnership return of income, form 1065, filed April 1, 1918, was a sufficient compliance with the statute, and that the filing of the excess profits tax return, form 1102, was not necessary.

Plaintiffs further insist that the invested capital of the partnership was nominal, and that it was taxable at 8 per cent. under section 209 of the Revenue Act of 1917.

The Commissioner of Internal Revenue held, and we think correctly, that the partnership was required to file a profits tax return, form 1102, and that the balance sheet, which the partnership attached to its income tax return, form 1065, was not a sufficient compliance with the statute and the regulations. The books and records of the partnership were examined and investigated by the Commissioner through a revenue agent, with the result that it was determined that the partnership actually had a large invested capital within the meaning of section 207 of the Revenue Act of 1917 (40 Stat. 306), and the facts establish that the partnership had more than a nominal invested capital. March 18, 1923, the Commissioner made a jeopardy assessment of excess profits tax against the partnership in the amount of $100,005.14. The partnership protested this additional assessment, and requested that the profits tax be computed and determined under the special relief provisions of section 210 of the Revenue Act of 1917. Upon the recommendation of the Committee on Appeals and Review, to which it was sent by the Commissioner after the claim of the partnership that the tax should be determined under section 209 of the Revenue Act of 1917 had been denied, the Commissioner tentatively computed the profits tax of the partnership under the special

relief provisions, which computation showed an overassessment of $75,141.86. Each change or proposed change in the partnership's tax liability naturally affected the income tax liability of the individual partners, and was reflected in the determination of their taxes. When the jeopardy assessment of $100,005.14 was made against the partnership, overassessments were allowed the individual partners in the amounts of $9,500 each. When the jeopardy assessment was reduced to $24,863.28, an additional assessment of about $6,800 was proposed against each partner. Ultimately the tax liability of the partnership and the two partners was reconciled and closed out together.

Upon the facts in this case, we are of opinion that the partnership of McDonnell & Truda was required to file an excess profits tax return, form 1102, and that in the circumstances the filing of the return of income, form 1065, was not a sufficient compliance with the statutes and the regulations. Updike v. United States, 271 U. S. 661, 46 S. Ct. 473, 70 L. Ed. 1138; Beam v. Hamilton (C. C. A.) 289 F. 9; Rockland & Rockport Lime Corp. v. Ham (D. C.) 38 F.(2d) 239; Morris County Crushed Stone Co. v. Com'r of Internal Revenue, 6 B. T. A. 800. Assessment and collection of the tax in question were not therefore barred at the time made. Lucas, Commissioner, v. Pilliod Lumber Co., 281 U. S. 245, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350; Updike v. United States, supra.

The petition is dismissed. It is so ordered.