## COMMISSIONER OF INTERNAL REVENUE v. NATIONAL LAND & CONSTRUCTION CO.

No. 6373.

Circuit Court of Appeals, Sixth Circuit.

April 13, 1934.

S. Dee Hanson, of Washington, D. C. (G. A. Youngquist, Sewall Key, Carlton Fox, C. M. Charest, and John D. Kiley, all of Washington, D. C., on the brief), for petitioner.

Robert E. Jacobson and R. B. Dresser, both of Providence, R. I. (Homer J. McBride, of Flint, Mich., on the brief), for respondent.

Frederick W. Tillinghast, Hinckley, Allen, Tillinghast, Phillips & Wheeler, Robert B. Dresser, and Edwards & Angell, all of Providence, R. I., amici curiæ.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

Pursuant to the provisions of the Revenue Act of 1917 (40 Stat. 300), the Commissioner of Internal Revenue provided two separate forms for corporation tax returns for the year 1917, No. 1031, entitled "Corporation Income Tax Return," and No. 1103, entitled "Corporation Excess Profits Tax Return." On March 30, 1918, the respondent filed a tax return for the year 1917 on Form 1031, showing total net income of $90.99 and an income tax of $1.82. It did not file a return on form 1103, but stated on form 1031 that there was no excess profits tax due. Upon an audit of the respondent's books and accounts made in 1928, the Commissioner determined that the net income of the respondent for 1917 was $9,026.76, upon which, less exemptions, he assessed an excess profits tax of $3,196.06, to which he added a 25 per cent. penalty. He did not assess any additional normal tax. Respondent appealed to the Board of Tax Appeals from the assessment of the excess profits tax, and the Board, without having before it any facts or data upon which the Commissioner acted, held that the imposition of the tax was barred by the statutes of limitation. 25 B. T. A. 562.

The asserted deficiency arises under the war excess profits tax provisions of the Revenue Act of 1917. Section 14 (a) of the Revenue Act of 1916 (39 Stat. 772), incorporated by reference into the Revenue Act of 1917, § 212 (40 Stat. 307), provided that all assessments of taxes should be made before the 1st day of June of each successive year, except in cases of refusal or neglect to make a return and in cases of erroneous, false, or fraudulent returns, in which cases the Commissioner, upon the discovery thereof, might at any time within three years after the return was due make a return and an assessment thereon. The Revenue Act of 1921 (42 Stat. 265) provided that the amount of taxes "due under any return made * * * under prior income, excess-profits, or war-profits tax Acts," § 250 (d), should be determined and assessed within five years after the return was filed, provided that in case of a false or fraudulent return with intent to evade tax, or of a failure to file a required return, the amount of tax due might be determined, assessed, and collected, and a suit or proceeding for the collection of such amount might be begun, at any time after it became due.

Respondent does not question the accuracy of the audit of the Internal Revenue Department showing that it had income subject to an excess profits tax for 1917 which should have been returned for taxation. The return of such income was due, under a general one-month's extension of time for filing returns, April 1, 1918. Thus, when the Commissioner made the deficiency assessment on June 12, 1928, both the three-years limitation in the act of 1917 and the five-years limitation in the act of 1921 had elapsed. The Board of Tax Appeals, assuming that the later statute had superseded the earlier one, found that the petitioner had not filed a false or fraudulent return with intent to evade tax nor failed to file a required return, and held that the assessment was barred by the five-years limitation.

■ Both the limitation and the exception thereto in the act of 1921 are made applicable by the terms of the act to income, excess profits, and war profits taxes under prior tax acts. We think it was within the power of Congress thus to extend the time in which the Commissioner might make deficiency assessments under earlier acts. Compare United States v. Chicago & E. I. R. Co. (D. C.) 298 F. 779, 781; United Thacker Coal Co. v. Commissioner (C. C. A.) 46 F.(2d) 231, 233; Brown & Sons Lumber Co. v. Burnet, 282 U.

S. 283, 286, 51 S. Ct. 140, 75 L. Ed. 343; Magee v. United States, 282 U. S. 432, 51 S. Ct. 195, 75 L. Ed. 442.

The petitioner contends that the respondent failed to file a return of income for excess profits taxes for the year 1917, and therefore he could assess and collect the tax on such income at any time after it became due. In holding that there was not a failure to file a return, the Board of Tax Appeals relied on United States v. Tillinghast, 55 F. (2d) 279 (District Court, R. I.), since affirmed by the Circuit Court of Appeals of the First Circuit. 69 F.(2d) 718. In that case both courts treated the return made on form 1031 as the normal or basic return, and the return required on form 1103 as supplemental, and held that, where the taxpayer's computation made in good faith on the basic return showed a result which left nothing to be carried forward to the supplemental return, he did not lose the right of protection from delayed suit provided by the statutes of limitation. This holding is contrary to the views expressed by this court in Beam v. Hamilton, 289 F. 9, 11, where it was held that the two returns were separate and distinct entities, and that the failure to file an excess profits tax return when such profits had been earned or received subjected the taxpayer to the statutory penalty imposed upon a "failure to make and file a return." The Board of Tax Appeals attempted to distinguish that case from the case at bar by stating that the taxpayer there filed an income tax return which was prima facie evidence that he was required to file an excess profits tax return. We have observed no such evidence from an examination of the record and opinion in the case. The Court of Appeals of the First Circuit distinguished the Tillinghast Case from the Beam Case on the ground that in the former the return was complete and the assessment resulted from the disallowance of a claim of loss, whereas in the latter the return was incomplete. If this distinction is valid, the case at bar would seem to fall within the doctrine of the case from this circuit rather than the one from the First Circuit.

The statute required the respondent to render a true and accurate return of its income for excess profits taxes for 1917 in the manner and form prescribed by the Commissioner, and containing such facts, data, and information as in the opinion of the Commissioner were necessary to determine the correctness of the respondent's income tax return and to carry out, among others, the excess profits tax provisions of the act. Rev-

enue Act of 1916, § 13 (b) (39 Stat. 771), incorporated by reference into Revenue Act of 1917, § 212 (40 Stat. 307). Under authority of this statute, the Commissioner, with the approval of the Secretary of the Treasury, issued Treasury Regulations 41, article 10 of which required the respondent to make a return of its income in excess of $3,000 for excess profits taxes. General instructions as to excess profits taxes on form 1031, upon which the respondent made a return, directed it, if it had a net income of more than $3,000 for the taxable year, to make a return of invested capital and compute the amount of tax on form 1103.

The respondent admits that it had an income in excess of $3,000 for the year 1917 subject to an excess profits tax, and that it made no return of such income. It contends that the filing of a return on form 1031 with the word "None" written in the place where its computation of the amount of excess profits tax should have been shown was a sufficient return, and it was not necessary, in view of the honest mistake it made in thus stating that no excess profits tax was due, to file a return of its income subject to such tax on the "form prescribed by the Commissioner," form 1103. We do not think the word "None" written on form 1031 places the respondent in any better position than the taxpayer occupied in the Beam Case, and we see no reason for departing from the doctrine of that case.

The order of the Board of Tax Appeals is reversed, and the cause remanded, with instructions to sustain the Commissioner's assessment.[1]

---

[1] Judge HICKENLOOPER participated in the hearing of this case, but died before the conference decision was reached.