## JOHN D. ALKIRE INV. CO. v. NICHOLAS.

### No. 2019.

Circuit Court of Appeals, Tenth Circuit.

July 18, 1940.

Rehearing Denied Sept. 6, 1940.

Robert G. Bosworth, of Denver, Colo. (Winston S. Howard and Pershing, Nye, Bosworth & Dick, all of Denver, Colo., on the brief), for appellant.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Julian G. Gibbs, Sp. Assts. to Atty. Gen., and Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge, delivered the opinion of the court.

Section 219(g) of the Revenue Act of 1926[1] provided that where the grantor of a trust had, at any time during the taxable year, either alone or in conjunction with any other person not a beneficiary of such trust, the power to revest in himself any part thereof, the income of such part should be included in computing his income; section 239, 26 U.S.C.A.Int.Rev. Acts, page 190, provided that every corporation subject to taxation should make a return, stating specifically the items of its gross income and the deductions or credits allowed, and that it should be verified by certain officers named therein; section 277, 26 U.S.C.A. Int.Rev.Acts, page 207, provided that, except as provided in the next succeeding section, the amount of the tax should be assessed within three years after the return was filed, and that no proceeding in court without assessment should be begun after the expiration of that period; and section 278, 26 U.S.C.A.Int.Rev.Acts, page 209, provided that in case of a false or fraudulent return with intent to evade tax or of a failure to file any return the tax might be assessed, or a proceeding begun in court for collection, at any time. Identical provisions were contained in the

---

[1] 44 Stat. 9, 34, 26 U.S.C.A.Int.Rev. Acts, page 176.

Revenue Acts of 1928[2] and 1932,[3] except that the period for the assessment and institution of suit, as authorized in section 277, was reduced to two years.

John D. Alkire, Sr., owned certain lots in Denver, Colorado. In April, 1909, he executed and delivered a lease covering such lots for a period of ninety-nine years, commencing March 1, 1910, at an annual rental of $12,500. On September 7, 1909, he caused to be organized a corporation known as The John D. Alkire Investment Company, hereinafter called the taxpayer, with a total authorized capital stock of one thousand shares, of which seven shares were issued as directors' qualifying shares; he thereupon conveyed such lots, subject to the lease, to the taxpayer and received the full nine hundred and ninety-three shares of its capital stock; and on the same day he assigned and transferred such stock to his children John D. Alkire, Jr., Henry J. Alkire, Mary A. Bell, Caroline V. D. Alkire and Eva E. Summerton, in trust. The trust instrument provided, among other things, that the proceeds of the trust estate should be paid to John D. Alkire, Sr. during the remainder of his life, then one-half to his widow during her natural life and the other half in equal parts to his eight children, and after the death of his wife the entire income in equal parts to the children; and further, that he reserved the unqualified power to revoke and set aside the declaration of trust and the assignment at any time prior to his death. From that time until December 1, 1925, the lessee paid the rentals to the taxpayer, and after making certain deductions for taxes and expenses, the taxpayer distributed them to the trustees. On December 1, 1925, the taxpayer executed and delivered a deed conveying the property, subject to the lease, to the eight children of John D. Alkire, Sr., and The International Trust Company, of Denver, as trustees. The deed recited that the trustees were to hold the property in accordance with the declaration of trust executed by the parties thereto, of even date therewith. The taxpayer and the grantees in the deed executed a declaration of trust, dated December 1, 1925, which provided, among other things, that the trustees should collect and receive the rentals due under the lease previously referred to; that after payment of certain expenses and a nominal sum to The International Trust Company as compensation for its services, the remainder should be distributed in conformity with the declaration of trust made by John D. Alkire, Sr., on September 7, 1909; and that upon demand of the taxpayer, the trustees would, upon payment of their legitimate expenses, reconvey the property to the taxpayer by a good and sufficient instrument. The rentals were thereafter paid to the trustees in such declaration of trust, not to the taxpayer.

The taxpayer seasonably made income tax returns for the years 1926 to 1935, inclusive, on Form 1120 furnished by the collector. There were some variations in the printed forms, but it may be said in general that there was inserted in each either the cipher "0" or the word "none" after the lines calling for the costs of goods sold, gross income, amount of deductions and credits, and amount of net income; and the word "none" was written in the space provided to show the assets, if any, of the taxpayer. In addition, each return bore on its face a statement that all income bearing property of the taxpayer having been disposed of, there was no income received from any source during the taxable year. The returns went through regular government channels and apparently were treated as returns. Each now bears on its face stamp marks indicating examination and acceptance by officers in the Bureau of Internal Revenue. In 1936, the taxpayer was advised that it was proposed to lay a deficiency assessment against it for the years in question. After conferences, an agent of the Bureau prepared and the taxpayer, on or about October 12, 1936, signed and filed returns for such years in which the rentals were returned as taxable income. Each was marked "amended return", and a sworn statement of the secretary was attached setting forth the contentions of the taxpayer and reciting that the return was made and filed without waiver of any rights or defenses which might be available. Assessments were made in February, 1938, the tax plus interest was paid under protest in April, 1938, claims for refund were filed within the time authorized by law, and were denied.

[2] 45 Stat. 791, §§ 166, 52, 275, 276, 26 U.S.C.A.Int.Rev.Acts, pages 407, 367, 429, 430.

[3] 47 Stat. 169, §§ 166, 52, 275, 276, 26 U.S.C.A.Int.Rev.Acts, pages 543, 500, 565.

The complaint in this action was divided into ten causes of action, each seeking to recover the amount paid for one of the years. Each cause was identical with the others except in respect to the years and the amounts. The essence of the causes of action was that the taxpayer had no taxable income for the years in question for the reason that it had parted with all of its income bearing property, and that the collection of the tax was barred by the statute of limitation. The collector answered that the taxpayer was the grantor of a revocable trust and was therefore liable for the tax on the income, and that the returns which the taxpayer filed currently were not returns within the meaning of the applicable revenue acts, and, therefore, were not sufficient to start the running of the statute of limitation. The collector prevailed, and the taxpayer appealed.

■ The taxpayer no longer contends that the rentals did not represent gains for which it was subject to be taxed. Its sole contention now is that the deficiency assessments were barred by the statutes of limitation—the three-year period from the filing of the return provided in the Revenue Act of 1926, and the two-year period provided in the subsequent acts. That contention turns upon whether the returns currently made for the years in question were returns within the meaning of the statutes of limitation. Section 239 and 52, supra, respectively required every corporation to make a return "stating specifically the items of its gross income and the deductions and credits allowed * * *." The burden was thus cast upon the taxpayer to furnish by return the information on which assessments were to be made. And by providing that the period of limitation should begin to run from the filing of the return, the statute manifested a clear legislative intent that the period should begin only when the taxpayer had furnished such information in the manner prescribed. Florsheim Bros. Co. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L. Ed. 542. Meticulous accuracy, perfect completeness, or absence of any omission is not exacted. But a return which fails to comply in a substantial degree with the requirements of the statute in respect to disclosing the requisite information essential to the making of assessments does not suffice to start the period of limitation.

■ These returns represented that the taxpayer had made disposition of its income bearing property, had no gross income, was entitled to no deductions or credits, and had no net income. Disposition had been made of the income bearing property, but it had been conveyed in trust with power of revocation reserved to the taxpayer. And that provision in the transaction of conveyance made the taxpayer liable for the tax on the income. That was a significant and decisive feature of the conveyance in respect to the taxpayer's liability for the tax. Yet the returns were silent concerning it. They did not indicate or suggest even vaguely or remotely that the disposition was in trust with the right of revocation reserved. They were utterly barren of any information which could put the commissioner on notice that the disposition was not made in the ordinary manner but was in trust with reservation of the power of revocation, in consequence of which the taxpayer was liable for the tax, therefore, and assessments were in order. More than that, the notation that disposition had been made of all the income bearing property and the representation that there was no gross income, net income, or taxable gain, considered together, strongly suggested that the conveyance had been made in the usual manner, not in trust with the power of revocation reserved. While there was no intentional fraud, wilful negligence or purposed attempt at evasion of tax on the part of the taxpayer, the returns not only failed to disclose requisite information but were misleading and calculated to prevent discovery of material facts. Returns of that kind are not effective to start the period of limitation running. Compare Florsheim Bros. Co. v. United States, supra; Lucas v. Pilliod Lumber Co., 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L. R. 1350; Germantown Trust Co. v. Commissioner, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770; United States v. National Tank & Export Co., 5 Cir., 45 F.2d 1005, certiorari denied, 283 U.S. 839, 51 S.Ct. 487, 75 L.Ed. 1450; Myles Salt Co. v. Commissioner, 5 Cir., 49 F.2d 232; National Contracting Co. v. Commissioner, 8 Cir., 105 F.2d 488.

Since the assessments were made within the period of limitation after the filing of the so-called amended returns, they were not barred by limitation.

Affirmed.