[Sac. No. 5959.  In Bank.  Jan. 20, 1950.]

THE PEOPLE, Respondent, v. UNIVERSAL FILM EXCHANGES, INC. (a Corporation), Appellant.

Loeb & Loeb, Thomas B. Richardson, Downey, Brand, Seymour & Rohwer and Adrian A. Kragen for Appellant.

John W. Preston, Athearn, Chandler & Farmer, Hoffman & Angell, F. G. Athearn, Leigh Athearn, Brobeck, Phleger & Harrison, Theodore R. Meyer, Robert H. Walker and Hart H. Spiegel as Amici Curiae on behalf of Appellant.

Fred N. Howser, Attorney General,, James E. Sabine and Irving H. Perluss, Deputy Attorneys General, for Respondent.

SPENCE, J.—This action was instituted by the state to recover the use tax allegedly due and owing from the defendant under the Use Tax Act of 1935 (Stats. 1935, ch. 361, p. 1297; Deering's Gen. Laws, 1935 Supp., Act 8495a, p. 2018) for the period from July 1, 1935, to March 31, 1937. The case was tried upon a stipulation of facts, which presented the question of whether the statute of limitations contained in section 15 of the act (now Rev. & Tax. Code, § 6487) was effective in bar of this action. The trial court adjudicated this issue contrary to defendant's claim, and from the adverse judgment thereupon entered defendant has appealed.

As in the trial court, the sole question submitted here for determination is the sufficiency of appellant's regularly filed quarterly tax returns to start the statute of limitations running against a use tax deficiency assessment. Appellant maintains that its respective tax returns satisfied the law as a report of its use tax liability for the period in question. An analysis of the returns sustains appellant's position.

From the record it appears that appellant, Universal Film Exchanges, Inc., is a foreign corporation engaged in business in the State of California; that on March 20, 1946, a use tax determination was made by the State Board of Equalization (hereinafter referred to as the board) with respect to the use or storage of prints of motion pictures, certain office supplies and film equipment during the period from July 1, 1935, to March 31, 1937; that following the board's denial of a petition for redetermination of said tax liability on August 1, 1947, the alleged deficiency assessment became final, and this

action was commenced; and that during the entire period involved, appellant had filed quarterly returns upon a form prescribed by the board for a combined showing of sales and use tax liability as follows:

SALES AND USE TAX RETURN

Computation of Retail Sales Tax

| | | For Retailers Use | For Board Use Only |
|---|---|---|---|
| 1. | Total sales (as defined in Sec. 2, Retail Sales Tax Act) | $ | |
| 2. | Add—Cost of tangible personal property purchased for resale and subsequently used or consumed rather than resold | | |
| 3. | Total (Item 1 plus Item 2) | | |
| 4. | Less—Allowable deductions (as per details on back hereof) | | |
| 5. | Taxable sales (Item 3 less Item 4) subject to Retail Sales Tax Act | | |
| 6. | Retail Sales Tax due and payable (3% of amount shown in Item 5) | | |

Computation of Use Tax

| | | | |
|---|---|---|---|
| 7. | Total sales price of tangible personal property sold for storage, use or other consumption in California and exempt from the Retail Sales Tax as sales in interstate commerce or sales made outside this State | $ | |
| 8. | Add—Sales price of tangible personal property purchased outside of California or in interstate commerce for storage, use or other consumption in this State by you on which seller has not collected use tax from you | | |
| 9. | Total (Item 7 plus Item 8) | | |
| 10. | Amount of use tax required to be collected (3% of amount shown in Item 9) | | |
| 11. | Total amount of tax due and payable (Item 6 plus Item 10) | | |

CERTIFICATE

I HEREBY CERTIFY, That I have examined this re-     Penalty
port and that the statements made and the figures
shown herein and in any accompanying schedules     Interest
are to the best of my knowledge and belief a true
and complete return, made in good faith for the
period stated, pursuant to the Retail Sales Tax Act
of 1933 and the Use Tax Act of 1935.      .      Total

Name of business or taxpayer

Agent, or officer if corporation, trustee, etc.

Title

The instructions which accompanied the returns in question contained in each case a specific direction corresponding to each numbered item on the return, but there was no general statement to the taxpayer to complete all blanks or to make entries on each line. Appellant's respective returns showed— under the sales tax subheading—entries as to items 1, 3, 4, 5 and 6 but a blank as to item 2; under the use tax subheading— blanks as to items 7, 8, 9 and 10; and finally an entry as to item 11, the same figure as was entered for item 6 there appearing as a total amount due for both the sales tax and use tax.

It further appears from the stipulation of facts that from July 1, 1935, to October 20, 1943, it was the practice of the section of the board which audited sales and use tax returns to treat the filing of such a return as a return of both sales and use tax; that during such period the board issued no notice of determination that such a return as appellant filed was not a sales and use tax return within the meaning of the applicable statute (Use Tax Act, § 7) for the reason that items 7 to 10, or any of them, were left blank; but that after an opinion of the attorney general dated October 21, 1943, which stated that the filing of a return on which there was no entry of information under the subheading "Computation of Use Tax" was "insufficient" as a report of use tax liability "to start the running of the statute of limitations" (2 Atty. Gen. Opns. 335, 336), the practice of the board was changed, and a return completed in the manner followed by appellant was considered as one limited solely to a sales tax report. Thereafter a notation which indicated either "none" or "zero" in response to the use tax items was a sufficient marking of that phase of the return within the administrative practice

of the board. The parties further stipulated that the returns were filed by appellant in good faith, with no intent to avoid payment of either sales or use tax.

At the time appellant's returns were filed, section 7 of the Use Tax Act of 1935 required "every retailer maintaining a place of business in this state" to "file with the board" a quarterly return "in such form as may be prescribed by the board" showing the transactions subject to the use tax for the reported period; and section 15 of the act provided that "except in the case of a fraudulent return, or neglect or refusal to make a return, every notice of a determination of an additional amount due shall be mailed within three years after the return was filed." Sections 9 and 21, respectively, of the Sales Tax Act of 1933 [Stats. 1933, p. 2599 as amended; Deering's Gen. Laws, 1937, Act 8493] provided similarly with regard to a return in report of transactions subject to the sales tax. Here more than nine years elapsed after the filing of appellant's returns before the board determined that a use tax was due from appellant for the period in question. The additional assessment, including interest of approximately 60 per cent, was then made against appellant upon the theory that it had made no use tax return during the designated period and hence, within the exception of section 15 of the Use Tax Act above quoted, the statute of limitations was tolled. But a reasonable interpretation of the form of appellant's returns does not sustain such theory.

Pursuant to its statutory authority, the board prescribed a single form denominated, according to its combined purpose, a "Sales and Use Tax Return," with the items numbered consecutively irrespective of the particular tax involved, and a concluding certificate stating the report to be "a true and complete return" pursuant to the sales and use tax acts. Appellant did not strike out the latter tax reference in completing the form furnished by the board for report of *both* tax liabilities. In making entries on the sales tax portion of the form, appellant left blank item 2 but filled in figures for the other items, including item 6 as a total therefor. Then leaving blank items 7, 8, 9 and 10 of the use tax portion, appellant filled in item 11 as a "total amount of tax due" the same figure appearing in item 6. Since item 11 was unequivocally stated to be "item 6 plus item 10," the entry for item 11 identical in amount with item 6 would mean that item 10 was necessarily zero, and inasmuch as item 10 represented a total of items 7, 8 and 9 of the use tax division, these too must

have been zero. In other words, appellant asserted a negative for items 7, 8, 9 and 10, that it had no transactions which it considered subject to computation for use tax purposes, and that its total tax liability for *both* taxes was the same as the sales tax figure.

The consolidated form of tax return was consistent with the supplementary nature of the two taxes as a comprehensive taxing program applicable to the sale, use, storage, or consumption of personal property, each mutually exclusive in taxing privileges not taxed by the other but operating in conjunction one with the other. (*Douglas Aircraft Co., Inc. v. Johnson,* 13 Cal.2d 545, 549 [90 P.2d 572] ; 24 Cal.L.Rev. 175, 176-177.) While the prescribed single form for return of the complementary taxes called for a separate computation of the two taxes, it allowed for their combined report upon completion of item 11 as a total figure for the correlated assessments. Accordingly, the board during the period in question and for several years thereafter treated a return such as that filed by appellant, as a report on *both* sales and use tax liabilities. The Legislature presumably knew of this administrative procedure by the board and yet during such time in the course of amending the Sales and Use Tax Acts, it made no change in those statutes which would restrict the board's power to prescribe the single form of return as a consolidated report of the two taxes. The leaving of blanks on the combined return was regarded by the board as a showing in negation of the presence of transactions subject to the respective taxes, and it issued no rules or regulations to the contrary. The similar language of the two taxing statutes was open to construction by the board, and ''the long-continued interpretation of the law by the officials called upon to administer it, with no ill results and no exception to such interpretation by the legislature, would be a strong factor tending to uphold [that] interpretation.'' (*Colonial Mut. C. Ins. Co., Ltd.* v. *Mitchell,* 140 Cal.App. 651, 657 [36 P.2d 127].) The failure of the board to challenge appellant's successive returns appears not to have been the result of negligence in its duty to enforce the statutes involved—a failure to act which ''should not be permitted to stand in the way of the correct administration of the law'' (2 Sutherland, Statutory Construction (3d ed.), Horack, § 5106, p. 520; see *Estate of Madison,* 26 Cal.2d 453, 463 [159 P.2d 630])—but rather, the result of carefully considered interpretation as the sustaining premise of a long-standing administrative practice. (*Coca-*

*Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 922 [156 P.2d 1]; *Colonial Mut. C. Ins. Co., Ltd.* v. *Mitchell, supra,* 140 Cal.App. 651, 657.)

It is a matter of common practice in many self-assessment tax forms for the taxpayer to leave a blank on the lines believed to be inapplicable to him unless the form specifically directs otherwise, and the existence of such practice strengthens appellant's claims as to the purport of the consolidated returns it filed during the period in question. (Restatement of Contracts, § 71.) Appellant's insertion of a ''zero'' or the word ''none'' as a notation on the use tax computation lines would have conveyed no more information to the board in auditing its returns than the blanks left as to those items indicating appellant's belief that it had no transactions subject for report there. In neither event would the negative response be equivocal or ambiguous as would be the case in an income tax return, for example, where a taxpayer's showing of no tax due might rest on the premise of insufficient income for tax purposes, or stem from offsets because of deductions or exemptions. But the consolidated sales and use tax return involved only simple additions as to taxable transactions so that a blank as to any of the consecutively numbered items would indicate no sum was to be added as to that particular. Accordingly, a total line left blank in summation of prior blank lines could reasonably be construed in no other way than as representing a ''zero'' entry, a positive representation that there were no taxable transactions to return. To this point are the decisions in bankruptcy cases on the question of whether the bankrupt should be denied a discharge, under section 14b of the Bankruptcy Act (30 Stats. 550, 11 U.S.C.A. § 32(c)) because he had obtained credit on the basis of a ''false statement in writing'' with respect to his financial condition. Pertinent there were these factors: (1) blanks left opposite items in the listing of liabilities which should have contained a figure if truthfully answered by the bankrupt; (2) a total of the column listing of liabilities necessarily representing the amounts in the blanks to have been zero; and (3) the certification that the financial statement was ''true and correct in every particular.'' In the light of these considerations, the federal courts have held the blanks to constitute a positive representation or declaration of nothing to report—there material on the issue of a false concealment of existing obligations and sufficient to prevent a discharge in

bankruptcy. (*In re Smith*, 232 F. 248; *In re Glick*, 53 F.2d 951; *In re Trimble*, 55 F.2d 165.) So here, appellant's omissions in the use tax division of its combined return—though made in good faith as distinguished from the bankruptcy cases—appear as a positive assertion of "zero" liability for such tax consistent with the total figure given in summation of its taxable transactions on the consolidated return and the certification that such report was "a true and complete return" under both the Sales and Use Tax Acts.

As so analyzed, such tax return as that filed by appellant should be deemed effective to start the statute of limitations running against its use tax liability. It was made on the form prescribed by the board as a final, consolidated return in the self-assessment of sales and use taxes for the quarterly period covered, and it was completed as a total report relating to both tax liabilities according to appellant's certification as to its scope. Meticulous accuracy, perfect completeness or the absence of any omission is not required to effectuate the running of the statute of limitations against a return, if it evinces an honest and genuine endeavor to satisfy the law. (*Zellerbach Paper Co.* v. *Helvering*, 293 U.S. 172, 180 [55 S.Ct. 127, 79 L.Ed. 264]; *Myles Salt Co.* v. *Commissioner of Int. Rev.*, 49 F.2d 232, 233.) Otherwise there would practically be no period of limitation whatever operative in bar of a deficiency assessment. (*Cf., United States* v. *Mabel Elevator Co.*, 17 F.2d 109, 110.) There is a difference between a defective or incomplete return filed in good faith in an attempted compliance with the law and the filing of what in effect is "no return" at all for the purpose here in question. As illustrative of the latter situation, a return which fails to disclose information essential to the making of an assessment (*John D. Alkire Inv. Co.* v. *Nicholas*, 114 F.2d 607, 609-610) or which purports to answer two tax liabilities without the filing of the additional separate return required by the governing statute and regulations (*Commissioner of Int. Rev.* v. *Lane-Wells Co.*, 321 U.S. 219, 222-223 [64 S.Ct. 511, 88 L.Ed. 684]; *Rockland & Rockport Lime Corp.* v. *Ham*, 38 F.2d 239, 240; *McDonnell* v. *United States*, 59 F.2d 295, 299-300; *Commissioner of Int. Rev.* v. *National Land & Construction Co.*, 70 F.2d 349, 350-351) or which is a tentative report made as a condition of the granting of an extension of time (*Florsheim Brothers Drygoods Co.* v. *United States*, 280 U.S. 453, 459-460 [50 S.Ct. 215, 74 L.Ed. 542]; *National Contracting Co.* v. *Commissioner of Int. Rev.*, 105 F.2d 488, 491) will not suffice

to start the period of limitations running against an additional tax assessment. (See 3 A.L.R.2d 647.)

At this point attention must be directed to the case of *Whitmore Oxygen Co.* v. *Utah State Tax Commission,* —— Utah —— [196 P.2d 976], holding that a combined sales and use tax form, completed in substantially the same manner as appellant here proceeded, constituted a return for the sales tax only and "was not sufficient to start the statute of limitations running against a use tax." (P. 982 [196 P.2d].) As supporting authority, the decision relies on the cases of *Commissioner of Int. Rev.* v. *Lane-Wells Co., supra,* 321 U.S. 219, and *John D. Alkire Inv. Co.* v. *Nicholas, supra,* 114 F.2d 607, which, in our opinion, as above noted, rest on distinguishable factual considerations. In the Lane-Wells Company case, the corporate taxpayer, having in good faith filed its income tax return and therein denied that it was a personal holding company subject to a surtax, unsuccessfully contended that "its regular corporation income tax return must be taken as an equivalent to the separate return . . . both for starting the limitation and avoiding the penalty" for failure to file the additional form required by the treasury regulations for a personal holding company. (P. 222.) The "taxpayer" was "under liabilities for two taxes and under an obligation to file two returns," and "one return addressed to but one of the liabilities" will not answer "the purpose of both." (P. 223.) Nor did it matter that the income tax return might show all the facts necessary for the commissioner to compute the taxpayer's liability as a personal holding company, for "the Treasury was fully within the statute in requiring that information in a *separate* return" (emphasis added; p. 223), and the "omission to file a prescribed return cannot be supplied by reference to a return filed for another purpose" (see *Hewitt* v. *Bates,* 297 N.Y. 239 [78 N.E.2d 593, 596]).

Likewise defective in furnishing the required tax information in the manner prescribed was the return filed in the John D. Alkire Investment Company case, *supra,* representing that the corporate taxpayer had no taxable income for the years in question. While disposition had in fact been made of the income bearing property, it was not done "in the ordinary manner but was in trust with reservation of the power of revocation, in consequence of which the taxpayer was liable for the tax"—which "significant and decisive feature of the conveyance in respect to the taxpayer's liability," the return

not only failed to mention, but its affirmative notations ''considered together, strongly suggested that the conveyance had been made in the usual manner, not in trust with the power of revocation reserved.'' As so analyzed, such return—although ''there was no intentional fraud, wilful negligence or purposed attempt at evasion of tax on the part of the taxpayer''—''not only failed to disclose requisite information'' but was ''misleading and calculated to prevent discovery of material facts,'' and accordingly it was ''not effective to start the period of limitation running'' against a deficiency assessment. (P. 610.)

But here, appellant was under obligation to file only a single return addressed to its sales and use tax liabilities for the quarterly period covered—not *two* returns in report of unrelated taxes (*cf., Commissioner of Int. Rev.* v. *Lane-Wells Co., supra,* 321 U.S. 219, 223)—and proceeding in good faith, appellant furnished no information that ''was misleading and calculated to prevent discovery of material facts'' essential to the making of assessments (*cf., John D. Alkire Inv. Co.* v. *Nicholas, supra,* 114 F.2d 607, 610). The important features in this case appear to stem from the following considerations: the prescribed form entitled as a return for the two complementary taxes; the consecutively numbered tax items listed for separate computation but consolidated for summation in the required total self-assessment procedure; and the concluding certification that the return was completed in reference to both sales and use tax obligations. Pursuant to the instructions accompanying the prescribed form, appellant made entries thereon only as to the transactions which it believed subject to tax, that is, in the sales tax portion; and the blanks in the use tax portion, as included in the final addition for the total tax assessment, represented, as clearly as the notation of a ''zero'' or the writing of the word ''none,'' appellant's disclaimer of any liability in those particulars. In short, there was no failure here on the part of appellant to comply with the requirements of the law in filling out its consolidated return on the form furnished it for that purpose, and a return so completed was accordingly treated by the board for many years, including the time in question, as referable to both sales and use tax computations. It does not appear in the contrarily decided Utah case above noted (*Whitmore Oxygen Co.* v. *Utah State Tax Commission,* —— Utah —— [196 P.2d 976]) that such administrative practice there prevailed. As the problem here presents itself, the

rationale of the dissent rather than that of the majority opinion in the Utah case constitutes, in our judgment, the better-considered view as to the sufficiency of such return as that filed by appellant to start the running of the statute of limitations as to *both* tax reports.

"[S]tatutes of limitation are to be viewed favorably as affording to parties who may, by the lapse of time, have lost the ability to procure evidence, repose and security from stale demands." (*Lilly-Brackett Co.* v. *Sonnemann,* 157 Cal. 192, 197 [106 P. 715, 21 Ann.Cas. 1279]; see, also, *Denke* v. *Bowes,* 77 Cal.App.2d 642, 645 [176 P.2d 81].) Long before the enactment of the Use Tax Act, section 338, subdivision 1, of the Code of Civil Procedure provided that "[a]n action upon a liability created by statute, other than a penalty or forfeiture" shall be commenced within three years, and that section has been held to apply to actions for the collection of delinquent taxes. (*County of Los Angeles* v. *Ballerino,* 99 Cal. 593, 595 [32 P. 581, 34 P. 329]; *City of San Diego* v. *Higgins,* 115 Cal. 170, 175 [46 P. 923]; *Chambers* v. *Gallagher,* 177 Cal. 704, 708 [171 P. 931].) Then in 1935, the Legislature, in adopting the Use Tax Act, provided the same limitation for bringing an action thereunder to recover a delinquent tax (now Rev. & Tax. Code, § 6711), in recognition of the right of the taxpayer, "except in the case of a fraudulent return, or neglect or refusal to make a return" (Use Tax Act, § 15, *supra*; now Rev. & Tax. Code, § 6487), to rely on the statutory time limit as an appropriate defense. Such policy, "vital to the welfare of society and [so] favored by the law" (*Denke* v. *Bowes, supra,* p. 645), stems from practical considerations, including the problem of assembling evidence in dispute of a long-delayed demand. (*Miller* v. *Ash,* 156 Cal. 544, 563-564 [105 P. 600].) Accordingly, appellant properly challenged the timeliness of the deficiency determination as to its use tax liability, here made more than nine years after it had filed its respective sales and use tax returns covering the period involved.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J. and Peters J. pro tem. concurred.