**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**M. L. BIRKETT and J. M. Birkett, Individually, and as a Partnership d/b/a The Photo Shop, Defendants.**

**Civ. A. No. 1507.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

May 7, 1960.

Earl Street, Regional Atty., Truett E. Bean, Trial Atty, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Bethell & Pearce, Fort Smith, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

### Statement

This is an action by the Secretary of Labor to recover wages for five employees of the defendants allegedly due under provisions of the Fair Labor Standards Act of 1938, as amended. 29 U.S.C.A. § 201 et seq. Jurisdiction of this action is conferred upon the court by Section 16(c) of the Act and by 28 U.S.C.A. §§ 1337 and 1345.

It is admitted that the employees were engaged in interstate commerce and in

the production of goods for interstate commerce while employed by the defendants during the period in question, and that they were not paid in accordance with the minimum wage and overtime provisions of the Act. As a defense to the action the defendants contend that their business operation was exempt from coverage under the Act by the "retail exemption provision," 29 U.S.C.A. § 213(a). As an additional defense the defendants allege that the action is barred by Section 9 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., because of the defendants' good faith reliance upon an official interpretation of the Act by the Administrator.

The complaint was filed October 14, 1959, and includes claims for wages due under both the minimum wage and the overtime provisions of the Act. The Secretary seeks to recover such wages for the period from July 1957 to July 1959. The case was tried to the court without a jury on January 22 and 23, 1960. Briefs have been received from the parties and have been considered along with the testimony and exhibits thereto. The court now files its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

#### 1.

The individual defendants, M. L. Birkett and J. M. Birkett, are brothers, and prior to 1949 became interested in photography. During 1949 Fort Chaffee, a United States Army installation on the outskirts of Fort Smith, Arkansas, was reactivated. The defendants submitted a bid to the Post Exchange for the right to operate the photography concession on the Post. This bid was accepted, and the defendants opened and began the operation in strict accordance with the terms of such a concession. After a few months, Fort Chaffee was deactivated by the Army and the concession was closed. Shortly after the start of the Korean conflict in 1950 the Post was again reactivated and the defendants reopened their photography concession.

The business of the concession was confined to taking pictures of military groups, making portraits of soldiers, and receiving exposed film for processing and printing. The defendants did not have facilities in their shop for developing and printing roll film, and accordingly sent such film to a concern in Memphis, Tennessee, for processing. In 1953, the Post Exchange Officer demanded that the defendants provide one-day service in processing roll film for the soldiers. This necessitated the defendants' acquiring photo-finishing equipment. The quarters provided by the Army on the Post were not large enough to house such equipment and additional space on the Post was not available. Therefore, in 1953 the defendants rented additional space in the City of Fort Smith and installed the required photo-finishing equipment therein. In addition, the Fort Smith location stocked cameras and camera equipment which the Fort Chaffee concession was prohibited from selling. Both locations operated under the name "The Photo Shop," and both were owned and operated by the defendants as partners. The Fort Smith operation has always been located in retail shopping areas and is open for business to the general public.

All roll film turned in at the Fort Chaffee concession by soldiers was processed in the Fort Smith shop. Film was also processed there for the general public. In addition, film was processed on a wholesale basis for some 50 drug stores located in and around Fort Smith and including some stores in Oklahoma. The drug stores so involved collected exposed roll film from its customers and delivered it to the Fort Smith shop where it was processed and returned to the drug stores. The drug stores received a discount from the shop and were thereby able to make a profit on the transaction. Such sales to drug store accounts constituted sales for resale.

**2.**

The photo concession located at Fort Chaffee was managed by J. M. Birkett while M. L. (Milton) Birkett managed the Fort Smith shop. As an added convenience to military personnel on the Post, boxes for exposed film were placed in each Post Exchange. The soldiers could place exposed roll film, along with a designated developing charge, in sacks provided by the defendants and then deposit the sacks in the locked boxes. The film was picked up daily and processed at the Fort Smith location and returned the following day to the individual soldiers. This type sale is designated on the sales analysis hereafter discussed as "Fort Chaffee Sales (PX)." Such sales were not sales for resale.

Financial records of the Fort Chaffee concession were kept separate from the Fort Smith shop, and the Fort Chaffee concession was charged monthly for the film processed by the Fort Smith shop. This was required by the provisions of the defendants' contract with the Post Exchange under which the Post Exchange received a specified percentage of the gross profits of the concession as rent on the building and for the license to do business on the Post. Also, all records concerning the consession operation were required to be available for Government audit.

During the period in question, July 1957 to July 1959, the major portion of the income of the defendant partnership was derived from the operation of the concession at Fort Chaffee. The sales made by the Fort Chaffee concession were sales to individual soldiers and were not sales for resale.

**3.**

The Fort Smith shop sold all types of camera equipment and supplies. The vast majority of such sales were to individual customers, although occasionally some camera equipment was sold to drug store accounts at a discount. The Fort Smith store likewise did much retail photo developing and finishing for its re-

tail customers, and in addition had photographers available to take pictures at weddings, parties, etc. This latter function is designated as "commercial" in the sales analysis hereafter quoted and was not a sale for resale.

All roll film received by the Fort Smith location for processing was returned in one day. The volume of photo finishing performed by the defendants varied with the season and even with the days of the week. The heaviest volume of business was concentrated during the summer months and during holiday seasons. Likewise, Monday and Tuesday of any week produced a higher volume of business due to customers taking pictures on weekends.

**4.**

The employees involved in this suit were all employed by the defendants at the Fort Smith location between July 1957 and July 1959. Some of them were employed during the entire period, and others worked only a portion of the time. Two of the employees still work for the defendants. All of the affected employees have made written requests to the Secretary of Labor to bring this action on their behalf. Some of the employees concerned in this action operated the photo-finishing equipment in the rear of the shop, while others were employed in the front of the store to wait on the customers. The duties of those who worked in the front of the store included preparing colored film for shipment to processing laboratories in New York and in Oklahoma. Admittedly, all of the affected employees were engaged in interstate commerce or in the production of goods for interstate commerce. All of the employees concerned in this case were paid by the week, and were not paid in accordance with the minimum wage and overtime provisions of the Fair Labor Standards Act.

A customary work week was 48 hours, consisting of six 8-hour days. There was conflict in the testimony as to whether the employees were sent home early during slack periods, but in view of the re-

sult reached in the case it is not necessary for the court to make detailed findings as to the number of hours worked each week by the complaining employees.

5.

The concession at Fort Chaffee and the shop at Fort Smith were component parts of the business enterprise. They were owned by the same partnership, and salesmen working for the defendants solicited business for both establishments. The primary reason for the establishment of the Fort Smith operation was to provide space for processing film turned in at the Fort Chaffee concession. The Fort Chaffee concession could not have operated without the Fort Smith shop. The two locations were operated as a single integrated business venture with each being dependent upon the other during the period involved in this lawsuit.

6.

The fiscal year of The Photo Shop is from July 1 to June 30. The following figures reflect the sales of The Photo Shop, including the Fort Chaffee concession, for the periods indicated:

| Retail Sales Breakdown | Fiscal 1957 (July 1957– June 1958) | Fiscal 1958 (July 1958– June 1959) |
|---|---|---|
| Commercial (taking pictures of weddings, etc.) | 0 | $ 762.78 |
| Cameras and equipment (sales to consumers) | $ 7,525.99 | 16,588.17 |
| Film and flash bulbs (sales to consumers) | 4,950.84 | 8,048.64 |
| Retail photo-finishing (for consumers) | 16,020.11 | 19,530.29 |
| Cleaning sales [1] | 5,673.10 | 0 |
| Ft. Chaffee concession sales | 194,085.80 | 182,545.47 |
| Ft. Chaffee PX sales (film left at boxes in PX's) | 12,817.20 | 11,923.38 |
| Total Retail Sales | 241,073.04 | 239,398.73 |
| Less Sales Tax Included | 253.40 | 1,284.96 |
| Actual Retail Sales | 240,819.64 | 238,113.77 |
| Non-Retail Sales | | |
| (Sales to drug stores for resale | 26,915.10 | 34,754.32 |
| Total Sales | $267,734.74 | $272,868.09 |

Based on the above sales analysis 89.95 percent of all sales during the fiscal year 1957 and 87.26 percent of all sales during the fiscal year 1958 were retail sales, that is, sales to the individual consumer and not sales for resale. Such sales are recognized in the general photographic industry as retail sales. Over

[1]. This figure represents defendants' commission for operating a dry cleaning pickup and delivery point in connection with the Photo Shop operation when the Fort Smith location was situated on Grand Avenue.

99 percent of the total sales were made in the State of Arkansas.

**7.**

During the period July 1957 to July 1959 the defendants' establishment was a hybrid type of operation, consisting of taking pictures, making portraits, selling film and camera supplies, and developing and finishing exposed film. A similar type operation is carried on by many photographers in medium size cities. Such an establishment is recognized in the general photographic industry as a retail establishment.

**8.**

In July 1959 the Army once again deactivated Fort Chaffee, and accordingly the defendants' concession on the Post was closed. This closing naturally resulted in a loss of sales for the defendants, who consolidated their business at the Fort Smith location. Likewise, it resulted in a change in the percentage of sales for resale, and since July 1959 the defendants have complied with all provisions of the Fair Labor Standards Act.

## Discussion

█ The primary issue in this case is whether or not the retail exemption provision of the Fair Labor Standards Act of 1938, as amended, is applicable to the defendants' business operation. The burden of proof is upon the defendants to bring their business within the protection afforded by this exemption. Walling v. General Industries, 1947, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088.

█ In order to resolve this issue it is necessary to specify first the period of time with which we are concerned. The plaintiff seeks to recover wages allegedly due the employees from July 1957 to July 1959. However, this action was not commenced until October 14, 1959, and it is admitted that the defendants started to comply with the provisions of the Act on July 1, 1959. A two-year statute of limitations for such actions is provided in 29 U.S.C.A. § 255(a). Therefore, all claims prior to October 14, 1957, are barred, and time during which the affected employees can possibly recover back wages is limited to the period October 14, 1957, to July 1959.

The second issue which must be settled before applying the retail exemption criteria is a determination of what constitutes the defendants' establishment. This, of course, is the critical issue in this case, and the one upon which its outcome must depend. The plaintiff insists that an establishment, as that term is used in the Act, can mean only a distinct physical place of business and that each physically separated unit must stand on its individual record without regard to its economic and functional relationship to another unit. If this contention is correct, the Fort Chaffee concession sales could not be counted with the sales at the Fort Smith location in determining the applicability of the retail exemption. If the Fort Smith sales are analyzed alone, the defendants do not meet the statutory requirements of a retail establishment, and the court must find the issues in favor of the plaintiff.

The defendants, however, contend that a business which functionally is an entity should be considered as an establishment within the meaning of the retail exemption even though it is composed of separate physical units. If this construction is correct, then the combined sales of the Fort Smith location and the Fort Chaffee concession should be considered in determining the applicability of the retail exemption.

The Supreme Court has twice considered this general problem in different factual situations. In Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, the defendant's business operation consisted of a chain of 49 retail grocery stores spread over two states, plus a separate warehouse and office building. No deliveries were made at the warehouse or office to customers. The employees in the office handled the clerical work for all the stores. The is-

sue in the case was whether the entire enterprise could be deemed a "retail establishment" with the effect of bringing the employees of the warehouse and central office under the exemption. In reaching the conclusion that the warehouse and central office of the chain system were not part of a single retail establishment, Mr. Justice Murphy begins with an analysis of the economic function of the office and warehouse employees, both within the Phillips organization and in the distributive system of this country generally. He points out that this enterprise represents the amalgamation of the retail and traditional wholesale functions, and that even if Phillips' claim that the word "establishment" meant an entire enterprise should be accepted, yet this would not be a retail enterprise. In concluding the opinion, Mr. Justice Murphy at page 498 of 324 U.S., at page 810 of 65 S.Ct. said:

"We are thus unable to say that the warehouse and central office employees of petitioner's interstate chain store system plainly and unmistakably fall within either the terms or the spirit of the exemption specified in Section 13(a) (2). Economic facts, legal principles and consistent and thorough administrative interpretation of the exemption all compel the conclusion that Section 13 (a) (2) is not applicable to the facts of this case. We therefore affirm the judgment of the court below."

In Mitchell v. Bekins Van & Storage Co., 1957, 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589, the Supreme Court held in a per curiam opinion that respondent's five physically separated warehouses do not constitute a single "retail establishment" within the retail exemption of the Fair Labor Standards Act.

Because of the brevity of the per curiam opinion in the Bekins case, there is apparently a tendency to lose sight of the important fact that in the Phillips case the Supreme Court gave careful and detailed consideration to the economic function of the units involved. This court does not construe the Bekins case to stand for the proposition that if a business is in separate buildings, each building is then necessarily a separate establishment. In the annotation to the Bekins case in 1 L.Ed.2d 1947, the annotator states at page 1950:

"It is clear that the cases discussed above [this includes the Bekins case] are not at odds with the principle that a business which is functionally an entity, although composed of separate physical units, may be a single establishment for purposes of the exemption. This principle was stated and applied in Mitchell v. T. F. Taylor Fertilizer Works, Inc. (1956, C.A.5th Ga.) 233 F.2d 284, in which the question presented was whether a fertilizer drying and mixing plant which was physically separated from the office at which all records in connection with the fertilizer business were maintained, all orders for fertilizer were turned in, and all invoices and dray bills were written up, but from which all deliveries were made, came within the exemption accorded retail establishments; the argument of the Secretary of Labor was that the plant could not qualify as a retail establishment because it was an establishment separate from the office, and no retail sales were made there. It was held that the trial court had not erred in finding the plant and office to be a single establishment, functionally an entity, with the result that plant employees were exempt to the same extent as office employees."

In the Taylor case referred to in the annotation quoted above, the Court of Appeals for the Fifth Circuit at pages 285–286 of 233 F.2d stated:

"The Secretary contends first that the plant and office are separate establishments, so that because, presumably, all sales are made initially

either on the road or in the office, and are approved in the office, the plant cannot qualify as a retail establishment because it makes no sales. The argument relies both on the legislative history of the 1949 amendments to § 213 and on court decisions before and after the amendments to show that an 'establishment' is not a business; and this much being demonstrated, the Secretary concludes that each physically separate unit of a business is an establishment. However, the suggestion that the right to an exemption depends upon such factors as whether part of the business is separated by a partition, or is conducted in an adjoining building, or in a building across the street or five blocks away, does not recommend itself as a rational distinction; furthermore, it does not appear to have been the intent of Congress. The House Managers, in their statement on the proposed bill, had the following to say of the exemption as applied to physically separate warehouses:

" 'Since, however, the exemption does apply to any employee employed "by" an exempt retail or service establishment, it is applicable to employees of an exempt retail or service establishment working in a warehouse operated by and servicing such establishment exclusively, whether or not the warehouse operation is conducted in the same building as the selling or servicing activities' U. S. Code Congressional Service 1949, p. 2265."

█ Therefore, the court feels that physical separation is only one factor to be weighed in determining whether two physically separated locations constitute a single establishment within the retail exemption provision of the Act. As indicated in the Phillips case, the court must also consider the economic and functional relationship of the two locations. When such factors

are considered in the present case, the court is convinced that the Fort Smith operation and the Fort Chaffee concession constitute one establishment within the meaning of the retail exemption of the Fair Labor Standards Act.

The criteria for determining whether or not defendants' establishment constitutes an exempt retail establishment is set forth in Section 13 of the Act, 29 U.S.C.A. § 213. The applicable provisions provide as follows:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to  *  *  * ; or (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry;  *  *  *  or (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: Provided, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located;  *  *  * ."

In analyzing these various tests, it is first noted that there is apparently no dispute that over 85 percent of the annual dollar volume of sales made by the defendants' establishment were made in Arkansas. The sales analysis prepared by the accountant and adopted by the court reflects that 99 percent of the de-

fendants' sales were made within the State of Arkansas.

The sales analysis also shows that over 75 percent of the annual dollar volume of sales were not for resale. The only sales for resale made by the defendants' establishment were the photo finishing done for drug stores and a very few items of camera equipment sold to drug stores. The vast majority of sales were small quantity sales to individual customers for their individual use.

■■■ As noted above, in order for the retail exemption to apply, the defendants' establishment must be recognized in the particular industry as a retail establishment. This recognition is a question of fact. Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734. The term "industry" as it is used in the Fair Labor Standards Act means a trade, business, industry, or branch thereof, or group of industries, in which individuals are gainfully employed. 29 U.S.C.A. § 203(h). An employer claiming the retail or service establishment exemption need not show unanimity of opinion on the part of authorities in every industry with which his business might be associated; his burden is simply to show by preponderance of the whole evidence that his services are recognized as retail in the particular industry with which he is found by the court to be indentified. Boisseau v. Mitchell, supra.

As indicated in the Findings of Fact, the defendants' establishment overlaps into several specialized fields within the general photographic industry. The establishment takes pictures, makes portraits, sells photographic supplies, and develops and prints exposed film. It is obvious that all of these functions fall within the general photographic industry. The only testimony in this case from anyone active in this general field as to the classification of the defendants' establishment came from the defendant, M. L. (Milton) Birkett, and from Chester H. (Doc) Miller. Both of these witnesses have long been associated with the photographic industry in this area, and each testified that the defendants' establishment was recognized as a retail one. The plaintiff did not offer any testimony on this point, but sought to impeach the testimony of the defendants' witnesses with articles from various photography magazines and with the Standard Industrial Classification Manual. The articles in the magazines shed little light on the problem, and a careful reading of the Standard Industrial Classification Manual tends to support the defendants' position that their establishment is a retail one.

The final element which the defendants must prove to bring themselves within the protection of the retail exemption is that 75 percent of the establishment's annual dollar volume of sales is recognized as retail in the industry. In interpreting this requirement, the Administrator of the Wage and Hour Division states in his Interpretative Bulletin, entitled "Retail and Service Establishment and Related Exemptions," at Sec. 779.9(c):

"It will be observed that the sponsors of the amendment, in classifying industries on the basis of the applicability of the retail concept to their selling or servicing, did so on the basis of common knowledge as to what is recognized and what is not recognized as retail selling or servicing in the light of the objectives and purposes of the exemption as to the type of establishment it is intended to exempt. Thus, the dividing line between sales and services to which the retail concept is applicable and those to which it is not applicable is the general and common understanding of people of what constitutes a retail sale or service in the traditional sense."

The Act does not direct the courts to the professional ivy towers for a refined analysis of economic theory; rather, it directs us to the industry itself for consideration of its own understanding of what constitutes a retail sale. Mitchell v. Roberts, D.C.S.Cal.1959, 179 F.Supp. 247.

The only testimony in this case from people active in the photographic industry is to the effect that the sales listed as retail sales in the sales analysis introduced by the defendants are recognized in the general photographic industry as retail sales.

■ The defendants' establishment made virtually all of its sales to the general public. It serves the everyday needs of the community in doing portrait photography for individuals, selling cameras, film and equipment to the ultimate users in small quantities, and in finishing directly for individuals the film they have exposed with their own equipment. It is a matter of common knowledge that very few individuals who own and use cameras have the knowledge or equipment to develop and print the film they expose. Developing and printing this film directly for the individuals who have taken the snapshots is certainly a retail-type function.

In view of the conclusions reached, it is not necessary for the court to consider the defendants' contentions under the Portal-to-Portal Pay Act of 1947. 29 U.S.C.A. § 251 et seq.

### Conclusions of Law

**1.**

This court has jurisdiction over the subject matter and the parties involved in this litigation. 29 U.S.C.A. § 216 (c).

**2.**

The claims of the plaintiff on behalf of the defendants' employees for back wages prior to October 14, 1957, are barred by the statute of limitations. 29 U.S.C.A. § 255(a).

**3.**

The Photo Shop, including the Fort Smith shop and the Fort Chaffee concession, constitutes one establishment within the meaning of the retail sales exemption of the Fair Labor Standards Act. 29 U.S.C.A. § 213.

**4.**

■ The defendants' establishment is a retail establishment within the meaning of the Fair Labor Standards Act, and is therefore exempt from the coverage of the Act. 29 U.S.C.A. § 213.

**5.**

The plaintiff's complaint should be dismissed.

Judgment in accordance with the above is being entered today.

