[S.F. No. 24045. May 12, 1980.]

BESSIE JONES, Plaintiff and Appellant, v.
TRACY SCHOOL DISTRICT, Defendant and Respondent.

COUNSEL

Cerney, McIlwrath, Fass & Yecies and Rolleen McIlwrath for Plaintiff and Appellant.

Christine C. Curtis and Peter H. Weiner as Amici Curiae on behalf of Plaintiff and Appellant.

Gerald A. Sherwin, County Counsel, and Rebecca A. Davis, Deputy County Counsel, for Defendant and Respondent.

OPINION

**RICHARDSON, J.**—Is a female employee who establishes an unlawful wage discrimination practice which is violative of Labor Code section 1197.5 subject to the two-year limitations period for recovery of back wages, and is she entitled to the attorney's fees which she incurred in asserting her claim? We will conclude that under the applicable statutory provisions, (1) recovery of back wages is ordinarily limited to the two-year period preceding the filing of a complaint for wage discrimination, but under the circumstances herein presented the period may be extended because plaintiff filed a wage discrimination claim in an earlier federal administrative proceeding; and (2) attorney's fees are recoverable.

I.  THE FACTS

From a review of the pleadings and declarations filed herein we glean the following uncontradicted facts: Appellant Bessie Jones has been a custodian for respondent Tracy School District since 1964, and has continuously performed the same duties as her male colleagues. In 1968, after four years of wage parity, she was reclassified by the district as a "custodial matron," with a decrease in salary, while continuing to perform the same work.

In January 1974, appellant requested reinstatement to her former classification with equal pay, together with her lost pay accumulated during the previous six years. In response, the district changed appellant's classification and gave her commensurate pay, but refused to compensate her for any back wages.

Appellant consulted the United States Department of Labor, which investigated and, on June 24, 1974, informed respondent that it was in violation of the federal Fair Labor Standards Act. (29 U.S.C. § 206(d)(1).) The department estimated that respondent owed $1,838 in back wages as a result of its unlawful discrimination over the preceding six years. Respondent refused to accept the Labor Department's recommendation, but offered appellant $558.30. This offer was rejected by appellant, who then filed suit in superior court on July 8, 1975, under Labor Code section 1197.5, the state "equal pay" provision. (All further statutory references are to the Labor Code unless otherwise cited.) It is unclear from the record why appellant abandoned assertion of her federal claim.

Appellant moved for a summary judgment, claiming that she was entitled to back pay for the entire period of unlawful discrimination. While the trial court granted her motion, it found that although respondent had discriminated against her for six years, recovery was limited to the actual loss of wages sustained within the two years immediately preceding the filing of her complaint herein. (See § 1197.5, subd. (h).) Accordingly, appellant was awarded only $318.58 in back wages and court costs. Her request for attorney's fees was denied and she appeals.

## II. LIMITATIONS PROVISION

It is undisputed that respondent unlawfully discriminated against appellant because of her sex by withholding a portion of her salary from 1968 to 1974. ■ The issue herein presented is whether appellant may recover compensation for that entire six-year period or only for the limited period during the two years preceding the filing of her complaint. In combination, the language of the statute taken as a whole, prior interpretations of similarly worded antidiscrimination statutes, and the important policy promoted by the statute of limitations, point strongly toward a limitation of recovery. In part III we discuss the question of tolling of the statute of limitations.

Section 1197.5 provides in pertinent part: "(a) No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity

or quality of production, or a differential based on any bona fide factor other than sex.

"(b) Any employer who violates subdivision (a) is liable to the employee affected in the amount of the wages, and interest thereon, of which such employee is deprived by reason of such violation. . . .

"(d) Every employer shall maintain records of the wages and wage rates, job classifications, and other terms and conditions of employment of the persons employed by such employer. All such records shall be kept on file for a period of two years. . . .

"(h) A civil action to recover wages under subdivision (a) may be commenced no later than two years after the cause of action occurs."

This section was intended to codify the principle that an employee is entitled to equal pay for equal work without regard to gender. (Subd. (a).) An employer in violation of this principle is liable to the employee "in the amount of the wages. . .deprived by reason of such violation." (Subd. (b).) Other provisions of the section may be paraphrased. The statute is enforced by the Division of Labor Standards Enforcement of the Department of Industrial Relations, which can approve and finalize a settlement between an employer and an employee. (Subd. (c).) Employers are required to keep records of wages and job classifications for two years. (Subd. (d).) An aggrieved employee may file a complaint with the division, which is then charged with the enforcement of the statute. (Subd. (e).) The division may file a civil action to recover back wages on the employee's behalf (subd. (f)), or an employee may file on his or her own behalf (subd. (g)). Finally, any such action "may be commenced no later than two years after the cause of action occurs." (Subd. (h).)

To support her contention that recovery of back pay is not limited by the foregoing statute of limitations, appellant correctly observes that section 1197.5 must be read as a whole to give effect to all of its provisions. (*People v. Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) In appellant's view, subdivision (h) is merely a *filing* requirement, and the language of subdivisions (b), (e), (f), and (g), seemingly allowing recovery for *all* back wages without express reference to a two-year

limitation, evinces a legislative purpose to provide for complete recovery in discrimination cases.

In this regard, appellant's contention lacks merit. The section, read as a whole, demonstrates a legislative intent to limit back pay recovery to two years. It is significant that subdivision (d) requires all employers to keep records of wages and job classifications for only two years. As explained below, this requirement discloses a legislative intent to limit recovery of back wages in the manner sought by respondent.

The relationship between the two-year record-keeping requirement of subdivision (d) and the limitations period set forth in subdivision (h) becomes apparent when these provisions are viewed in the light of the important purpose served by the statute of limitations, namely, "to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available." (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 317 [146 Cal.Rptr. 224, 578 P.2d 941]; *People* v. *Universal Film Exchanges* (1950) 34 Cal.2d 649, 659 [213 P.2d 697].) By reason of the operation of subdivision (d), documentary evidence may be lacking to support or defend against claims of discrimination occurring more than two years before the initiation of an action for back wages, while less stale claims, in all probability, will be well documented. Surely the Legislature would not have imposed only a two-year record retention requirement had it intended to permit unlimited recovery in wage discrimination cases. Thus, in order to harmonize the various provisions of section 1197.5, we read the two-year limit of subdivision (h) as both a filing requirement and a limitation upon recovery.

This interpretation is further supported by prior decisions in cases awarding back pay or similar periodic benefits under similar California statutes or administrative regulations. We have consistently limited the extent of such awards by the applicable statute of limitations. (*Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 761 [112 P.2d 229] [teacher's pay improperly withheld because of reduced job classification]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 580-581 [59 P.2d 104] [policeman's pension benefits unlawfully withheld]; *Raymond* v. *Christian* (1937) 24 Cal.App.2d 92, 115 [74 P.2d 536] [state hospital worker's pay withheld after administrative revision of pay scale].) Recovery limitations were imposed in these cases on the theory that each deficient payment created a separate and distinct violation, triggering the running of a new limitations period. (*Dryden, supra,* at

p. 581; see *Hodgson v. Behrens Drug Company* (5th Cir. 1973) 475 F.2d 1041, 1050 [interpreting the federal Fair Labor Standards Act].) The application of this "separate violation" rationale to suits filed under section 1197.5 would allow recovery for the same period during which employers must retain wage records. We think the Legislature intended precisely this result.

Appellant asserts that the language of subdivisions (b), (e), (f) and (g) of section 1197.5, awarding back pay without apparent time limitation, demonstrates a legislative intent to provide for recovery of all back wages. Nonetheless, in cases involving similarly worded antidiscrimination statutes, it has been held that recovery is limited by the period of the applicable statute of limitations. For example, the equal pay provision of the federal Fair Labor Standards Act (29 U.S.C. §§ 206(d)(1), 216(b), 255(a)), containing a two-year limitations period similar to section 1197.5, has been interpreted to limit back pay awards to the two-year period prior to the filing of a complaint. (*Hodgson v. Behrens Drug Company, supra*, 475 F.2d 1041, 1050; *Mitchell v. Birkett* (W.D.Ark. 1960) 183 F.Supp. 291, 296; see *Shandelman v. Schuman* (E.D.Pa. 1950) 92 F.Supp. 334, 335.) We conclude, accordingly, that the use of language which seemingly allows recovery of back wages without express limitation as to time does not conclusively demonstrate a legislative intent to permit recovery without regard to the time which has elapsed before the complaint is filed.

Appellant additionally argues that the remedial nature of section 1197.5 requires us to interpret it liberally in favor of an aggrieved employee. (See *Viles v. State of California* (1967) 66 Cal.2d 24, 32-33 [56 Cal.Rptr. 666, 423 P.2d 818]; *Buck v. City of Eureka* (1893) 97 Cal. 135, 137-138 [31 P. 845].) However, we find significance in the fact that the federal courts also operate under a canon which provides that a remedial statute should be construed liberally to effect its purpose. (*Peyton v. Rowe* (1968) 391 U.S. 54, 65 [20 L.Ed.2d 426, 433, 88 S.Ct. 1549]; *Westinghouse Electric Corp. v. Pacific Gas & Electric Co.* (9th Cir. 1964) 326 F.2d 575, 580.) Nevertheless, as we have seen, in interpreting a similar remedial antidiscrimination law heretofore discussed, federal courts have limited recovery of back pay in the manner sought by respondent herein.

Appellant observes that her position is supported by a policy statement of the Department of Industrial Relations that recovery under section 1197.5 includes "the balance of wages for the entire period of

discrimination . . . ." (Div. of Labor Stds. Enforcement, Internal Policy/ Procedure Memo. No. 79-2 (Mar. 9, 1979).) ■ Although we ordinarily defer to the administrative interpretation of a statute adopted by the agency charged with its enforcement (e.g., *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 759 [22 Cal.Rptr. 14, 371 P.2d 758]), such deference is not appropriate here. The foregoing interpretation of section 1197.5 occurs in an internal memorandum, rather than in an administrative regulation which might be subject to the notice and hearing requirements of proper administrative procedure. (Gov. Code, § 11420 et seq.) Further, the memorandum was composed and circulated after the Department of Industrial Relations had become an amicus curiae in this case. Following its issuance, both appellant and the department cited it in their respective briefs. This chronology, in our view, substantially dilutes the authoritative force of the memorandum. (Cf., *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 311-312, fn. 8 [118 Cal.Rptr. 473, 530 P.2d 161].)

■ In summary, the trial court properly ruled that recovery under section 1197.5 is limited by the two-year statute of limitations of that section. The wording of the provision as a whole, prior interpretations of similar antidiscrimination statutes, and important policy considerations aimed at preventing the litigation of stale claims, together compel this result. However, as we discuss below, the trial court failed to consider the possible application of an equitable tolling of the statute by reason of the filing of a federal wage discrimination claim. Accordingly, the court erred in entering summary judgment for appellant in an amount limited by the two-year period before appellant filed her present suit.

### III. EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

Appellant's points and authorities in support of her motion for summary judgment referred to a prior attempt by the United States Department of Labor to induce respondent to pay appellant the wages it unlawfully withheld from her. Although appellant failed to specify when, if ever, she filed her complaint with the department, she appended a letter from the department to respondent, dated June 24, 1974, which informed respondent that it was in violation of the federal Fair Labor Standards Act and requested that respondent pay appellant the entire amount of withheld wages back to 1968. The letter referred to

prior correspondence from respondent to the department, but did not indicate whether or not appellant had filed a formal claim with the department.

Appellant's motion for summary judgment, by its reference to the federal proceedings, thereby sufficiently raised the issue whether her prior pursuit of a federal remedy may have equitably tolled the state statute of limitations. In *Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839], we held in the context of a suit to recover for an industrial injury that the running of a limitations period is equitably tolled when an injured person has several formal legal remedies and reasonably and in good faith pursues one. *Elkins* involved an injury for which the plaintiff arguably had both administrative and judicial remedies. He first filed a workers' compensation claim and, after the claim was denied for failure to prove his status as an employee, he then filed a personal injury action in superior court. Although the suit was filed after the expiration of the one-year statute of limitations, we nevertheless held that the statute was tolled during the pendency of the administrative remedy, regardless of whether or not exhaustion of the administrative remedy was a prerequisite to suit. Similarly, in *Addison* v. *State of California, supra*, 21 Cal.3d 313, we applied the foregoing equitable tolling principle to reverse dismissal of an action filed in state court, on the basis that plaintiff had reasonably and in timely fashion pursued a concurrent *federal* remedy which had been dismissed for lack of jurisdiction after the applicable state statute of limitations had run.

Although appellant has not expressly relied upon the equitable tolling doctrine of the foregoing cases, we may consider it here. ■ We have, on occasion, allowed consideration of issues not previously raised by the parties where the facts necessary for their resolution were on record. (See, e.g., *Wong* v. *DiGrazia* (1963) 60 Cal.2d 525, 532, fn. 9 [35 Cal.Rptr. 241, 386 P.2d 817]; *Fawkes* v. *Reynolds* (1922) 190 Cal. 204, 209 [211 P. 449].) Appellant's motion for summary judgment affirmatively demonstrated that she had pursued a federal remedy before filing in superior court. Her request for *all* back pay in her motion encompassed an enhancement of her award by equitable tolling and was sufficient to raise the equitable tolling issue.

A review of the record reveals that when appellant made her motion for summary judgment, there still remained a triable issue of fact as to whether she had met the requirements for the invocation of the equita-

ble tolling doctrine. ■ We thus hold that the trial court erred in granting the motion and limiting appellant's measure of recovery without permitting her the opportunity to litigate the matter. (See, e.g., *Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 685-686 [150 Cal.Rptr. 258, 586 P.2d 572]; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953]; Code Civ. Proc., § 437c.) On remand, appellant should be given the chance to show, if she is able to do so, that the two-year statute of limitations under section 1197.5 was tolled during the period in which appellant was pursuing an alternative federal remedy, pursuant to the principles set forth in *Elkins* and *Addison*, both *supra*.

## IV. ATTORNEY'S FEES

■ Next, we examine appellant's contention that a successful plaintiff in a suit filed under section 1197.5 is entitled to recover attorney's fees. Appellant urges that the language of the section as a whole and its legislative history clearly mandate such an award. Respondent, however, asserts that the section merely gives the trial court discretion to disallow attorney's fees, and that the court did not abuse its discretion in denying such an award here.

We agree with appellant that the statute, read as a whole, must be construed to require an award of attorney's fees. Subdivision (g) of section 1197.5 provides that an "employee receiving less than the wage to which the employee is entitled...may recover in a civil action the balance of such wages, including interest thereon, together with the costs of the suit and reasonable attorney's fees...." Section 15 provides that in construing provisions of the code, the use of the word "shall" is mandatory and "may" is permissive. In the present case, however, the word "may" is not directed to the trial court, but to the complaining party. It indicates that the plaintiff may choose among several alternative forms of relief.

An aggrieved employee has three alternative remedies under section 1197.5. An employee "may" file a complaint with the Division of Labor Standards Enforcement requesting administrative relief. (Subd. (e).) The division "may" bring a civil action on the employee's behalf, unless the employee objects. (Subd. (f).) Finally, subdivision (g) specifies that on her own behalf the employee "may" file a civil action to recover her lost wages, interest thereon, suit costs, and attorney's fees without prior

exhaustion of her administrative remedy. (See *Bass v. Great Western Sav. & Loan Assn.* (1976) 58 Cal.App.3d 770, 773 [130 Cal.Rptr. 123].)

Thus, reading the statute as a whole, we conclude that the word "may" in subdivision (g) indicates that the filing of a civil suit is only one of three options possessed by an aggrieved employee. The use of the word "may" does not demonstrate an intent to give the trial court discretion to award attorney's fees, but merely establishes the plaintiff's *right* to such an award should she elect to pursue the civil remedy.

The legislative history of section 1197.5 supports our conclusion that the Legislature intended to require an award of attorney's fees to a successful plaintiff. Prior to 1976, section 1197.5 was silent on the subject of attorney's fees. On April 17, 1975, a bill to add the following language to subdivision (g) was introduced in the Senate (along with several other changes in the section) as Senate Bill No. 1051: "Any employee receiving less than the wage to which he is entitled under this section may recover in a civil action the balance of such wages, together with the costs of suit, notwithstanding any agreement to work for a lesser wage. The court in any such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee to be paid by the defendant." This proposed amendment evinces an unequivocal intent to require an award of attorney's fees. This intent is further reflected in the analyses prepared by two independent sources in the Legislature. According to one such analysis, "The court would be required [under the proposed amendment] to award the plaintiff in an action under the equal pay provision a reasonable attorney's fee." (Sen. Industrial Relations Com., Analysis of Sen. Bill No. 1051 (May 5, 1975) p. 3.) Under the second legislative review, it was concluded that "This bill would require the court in...civil suits to award attorney's fees and suit costs to the employee." (Legislative Counsel's Dig. of Sen. Bill No. 1051 (1975-1976 Reg. Sess.).)

After the bill passed the Senate, the Assembly added a provision to subdivision (g) which expanded the plaintiff's remedies by requiring an award for prejudgment interest on unpaid wages. Additionally, subdivision (g) was shortened by condensing its two sentences into one. In so doing, the Assembly deleted the word "shall" before the provision for the award of attorney's fees. However, the analysis which accompanied this final simplified version of subdivision (g) indicates that the assembly maintained its intent to *require* an award of attorney's fees: "This

bill would require the court in such civil suits to award attorney's fees...to the employee." (Legislative Counsel Dig. of Sen. Bill No. 1051, *supra*, as amended in Assembly (1975-1976 Reg. Sess.).) We must conclude that although the Assembly altered the phraseology of the original bill, it demonstrated no intent to change the original bill's mandatory award of attorney's fees. (Cf., *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 493 [159 Cal.Rptr. 494, 601 P.2d 1030]; *Hammond* v. *McDonald* (1942) 49 Cal.App.2d 671, 681 [122 P.2d 332].)

Finally, a strong policy argument exists in favor of an interpretation of section 1197.5 that the award of attorney's fees is mandatory. Most employers in employment discrimination suits can more readily afford a protracted discrimination suit than can their employees. The mandatory award of attorney's fees encourages aggrieved employees to pursue meritorious but expensive claims, some (like the instant claim) involving lost pay awards which are small compared to the plaintiff's attorney's fees. This policy was recognized by Congress when it mandated an award of attorney's fees to a successful plaintiff in a suit under the federal Fair Labor Standards Act (29 U.S.C. § 216(b)), which the California "equal pay" act closely tracks.

In summary, the language of section 1197.5 read as a whole, the legislative history of subdivision (g), and the relative inability of some employees to bring wage discrimination suits require a conclusion that the trial court lacked discretion to disallow the award of attorney's fees to appellant.

## V. CONCLUSION

The trial court properly ruled that the recovery of back wages under section 1197.5 is limited by the two-year statute of limitations of that section. However, the court erred when in the course of granting appellant's motion for summary judgment it limited her recovery from respondent without regard to the unresolved and triable issues of fact with respect to the equitable tolling of the statute of limitations. Further, in the light of the legislative history of section 1197.5, subdivision (g), the court erred in denying appellant recovery of her attorney's fees.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

**BIRD, C. J.**—I must respectfully, but strongly, dissent. The majority's conclusion weakens an important statute which gives employees full back pay for wages lost due to discrimination based solely on sex. The majority's conclusion ensures that in California, contrary to the Legislature's intent, "equal pay for equal work" will have little or no meaning since this court has weakened the statutory remedy beyond recognition.

No one disputes the fact that appellant suffered discriminatory practices at the hands of her employer for six years. No one denies that appellant was not paid her proper wages for that entire period. Despite these facts, this court has decided to rewrite the statute and deny appellant the back wages that are rightly hers. I cannot condone such an inequitable result nor can I be a party to the wholesale rewriting of the Legislature's intent.

I

Appellant, Bessie Jones, is a custodian for respondent, Tracy School District. She was hired in 1964, and performed the same duties and received the same pay as her male colleagues. Four years later, unlike her male counterparts, she was reclassified a "custodial matron," and her pay was reduced although she continued to perform the same duties as the male custodians.

In January 1974, appellant requested that she be reinstated to her former classification and receive the same rate of pay as a "custodian." She also asked for the pay that was denied her during the previous six-year period of discrimination. Several months later, respondent changed appellant's classification, but it adamantly refused to pay appellant her back wages resulting from respondent's discriminatory practices. Appellant then sought and received help from the United States Department of Labor. On June 24, 1974, the Department of Labor informed respondent that it was in violation of the federal Fair Labor Standards Act. The department estimated appellant was owed $1,838 in back wages as a result of respondent's illegal discrimination over the past six years. Respondent refused to comply and offered appellant $558.30. This offer

was rejected, and suit was filed on July 8, 1975, under Labor Code section 1197.5.[1]

The trial court found that respondent had indeed discriminated against appellant for six years, but limited recovery to the actual loss of wages sustained within two years of the filing of the lawsuit. (§ 1197.5, subd. (h).) Appellant was awarded $318.58 in back wages and court costs. Her request for attorney's fees was denied. This appeal followed.

## II

There is no dispute that respondent improperly reclassified appellant so that it could pay her wages below that of the male custodians. There is also no dispute that appellant performed the same work as the male

---

[1]Section 1197.5 presently provides, in pertinent part: "(a) No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . .

"(b) Any employer who violates subdivision (a) is liable to the employee affected in the amount of the wages, and interest thereon, of which such employee is deprived by reason of such violation.

"(c) The provisions of this section shall be administered and enforced by the Division of Labor Standards Enforcement. . . . Acceptance of payment of sum or sums made by an employer and approved by the division shall constitute a waiver on the part of the employee of the employee's cause of action under subdivision (g).

". . . . . . . . . . . . . . . .

"(e) Any employee may file a complaint with the division that the wages paid are less than the wages to which the employee is entitled under subdivision (a). . . . The division shall take all proceedings necessary to enforce the payment of any sums found to be due and unpaid to such employees.

"(f) The department or division may commence and prosecute, unless otherwise requested by the employee or affected group of employees, a civil action on behalf of the employee and on behalf of a similarly affected group of employees to recover unpaid wages under subdivision (a), and in addition to such wages shall be entitled to recover costs of suit. . . .

"(g) Any employee receiving less than the wage to which the employee is entitled under this section may recover in a civil action the balance of such wages, including interest thereon, together with the costs of the suit and reasonable attorney's fees, notwithstanding any agreement to work for a lesser wage.

"(h) A civil action to recover wages under subdivision (a) may be commenced no later than two years after the cause of action occurs."

The majority fail to consider the fact that section 1197.5 did not provide for the award of attorney's fees when appellant initiated this action. During the pendency of this action, subdivision (g) was amended to its present form to authorize the award of such fees. This action must be governed by the section as amended. (Cf. *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 931-932 [154 Cal.Rptr. 503, 593 P.2d 200].)

All further references are to the Labor Code, unless otherwise indicated.

custodians but was paid less for it because she was a woman. Respondent's discriminatory act resulted in six years of "unequal pay for equal work." No one disputes these facts. The sole issue before this court is whether appellant will receive the full amount of the wages that were unlawfully withheld from her or only those back wages which were wrongfully withheld within two years of the filing of appellant's complaint.

Section 1197.5, subdivision (a) codifies the principle that an employee is entitled to equal pay for equal work without regard to the employee's sex. The remaining subdivisions specify the statutory remedies an aggrieved employee may pursue. Subdivision (b) provides that an employer violating the mandate of subdivision (a) is liable to the employee "in the amount of the wages...deprived by reason of such violation." The scope of an aggrieved employee's remedy is reaffirmed in subdivision (g), which states that the employee is entitled to recover "the balance of such wages" wrongfully withheld. Subdivision (h) requires the worker to commence his or her civil action for back wages within two years after a cause of action accrues.

Respondent construes subdivision (h) to mean that it is liable only for the back wages unlawfully withheld within two years of the commencement of the civil suit. However, respondent overlooks subdivision (b) which embodies the primary remedy available to an injured employee under the statute—the payment of *all* back wages unlawfully withheld as a result of an employer's past discriminatory conduct.

The case law is clear. A statute must be read and considered as a whole so as to give effect to all its provisions. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; *In re Bandmann* (1958) 51 Cal.2d 388, 393 [333 P.2d 339]; *REA Enterprises* v. *California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 610 [125 Cal.Rptr. 201].) If subdivision (h) were interpreted to limit an employer's liability to only those wages wrongfully withheld within the two-year period prior to commencement of suit, the compensatory objective of subdivisions (b) and (g) would be totally undermined.

The majority, relying on the two-year record keeping provision of subdivision (d), conclude that the Legislature intended that the

two-year period within which to commence suit (subd. (h)) is a substantive restriction on the scope of the back-wage remedy provided by the statute.

However, the majority must ignore the legislative history of section 1197.5 to reach this conclusion. From its original enactment in 1949 to 1965, section 1197.5 expressly provided for a 30-day limit on the recovery of back wages. In 1965, the Legislature amended the section in several respects and deleted any reference to a limitation on the period of back wages which can be recovered. Establishment of a two-year record keeping provision does not detract from the fact that if the Legislature intended to continue limiting the period of recoverable back wages it could have done so explicitly as it had done for over fifteen years.

Furthermore, in the majority's attempt to harmonize the various subdivisions of the section, it focuses on the relationship between subdivisions (h) and (d) and fails to deal with the language in subdivisions (b), (f), and (g) which sets forth a clear intent by the Legislature to provide victims of wage discrimination with complete relief.

The majority's reliance on another similarly worded statute is also misplaced. Although the federal Fair Labor Standards Act (29 U.S.C. §§ 206(d)(1), 216(b), 255(a)) contains an express statute of limitations, it does not contain wording similar to that in section 1197.5 giving an injured employee the right to recover the "balance" of wages wrongfully deprived.

Finally, the other cases involving recovery of back wages or periodic payments relied on by the majority are easily distinguished since none involved the scope of a remedy for the redress of a violation of *a constitutional and a civil right*.

As Justice Reynoso pointed out in his dissenting opinion below, "[r]emedial statutes, such as this, must be construed liberally regarding the social problems meant to be ameliorated and on behalf of the class to be helped. (See *Viles* v. *State of California* (1967) 66 Cal.2d 24, 32-33 [56 Cal.Rptr. 666, 423 P.2d 818]; *Buck* v. *City of Eureka* (1893) 97 Cal. 135, 137-138 [31 P. 845].) Statistics compiled by the United States Department of Labor confirm that the average income for women is far lower than that of men; in 1956, the median income for women was 63 percent of the income of men. By 1973, the wage discrepancy of

at least one classification, service workers, was widening; the median salary for women was $4,583, while for men it was $7,937. Thus, women earned only 57 percent of the average income of men. These figures underscore the social evil which Labor Code section 1197.5 seeks to correct."

In construing a statute, it is presumed that every statutory word, phrase and provision is intended to have meaning and perform a useful function. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].) It is important that the Legislature's intent, as manifested in the natural meaning of the words adopted, not be overlooked or ignored. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].) The administrative agency, charged with implementing and enforcing section 1197.5, has adopted a construction of section 1197.5 which achieves that end.

The Division of Labor Standards Enforcement allows an aggrieved employee, who files a suit within two years of a violation of subdivision (a), to recover "the balance of wages for *the entire period of discrimination....*" (Div. of Labor Stds. Enforcement, Internal Policy/Procedure Memo No. 79-2 (Mar. 9, 1979), italics added.)

In interpreting statutory provisions, administrative regulations issued by the agency vested with the statutory power to implement a particular statute are entitled to great weight and deference. Further, these regulations are normally followed by courts unless they are clearly erroneous. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 759 [22 Cal.Rptr. 14, 371 P.2d 758]; *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].) In the present case, the division's guideline provides a reasonable meaning that harmonizes each of the sections. Further, the legislative policy underlying section 1197.5 and the legislative history of the statute support the division's interpretation.

Section 1197.5 was passed as remedial legislation to redress violations of a worker's civil and constitutional right to be free from sex discrimination in employment.[2] This Labor Code section was passed as part of

---

[2]Article I, section 8 of the California Constitution provides that "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex...."

a comprehensive program at the federal and state level to eradicate sex discrimination in the nation's work force. (See e.g., 42 U.S.C. § 2000e-2 et seq.; Lab. Code, § 1410 et seq.) Under our case law, section 1197.5 should be liberally construed to further its remedial objective and protect members of the class it was intended to assist. (See *Viles* v. *State of California, supra,* 66 Cal.2d 24, 32-33; *Buck* v. *City of Eureka, supra,* 97 Cal. 135, 137-138; *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313].)

The protective purpose of this section becomes all the more evident when its evolution is explored. Since its enactment in 1949, the Legislature has steadily expanded the scope of its protection and the remedies available to injured employees. (See Stats. 1949, ch. 804, § 1, p. 1541; Stats. 1957, ch. 2384, § 1, p. 4130; Stats. 1965, ch. 825, § 1, p. 2417; Stats. 1968, ch. 325, § 1, p. 705; Stats. 1976, ch. 1184, § 3, p. 5288.) For example, the section as initially written and enacted limited the extent of an employee's back wage recovery. A civil suit had to be commenced within six months of a violation and an employer's liability was explicitly restricted to only those wages unlawfully withheld within thirty days of any notice from the employee. (Stats. 1949, ch. 804, § 1, p. 1541.) In 1965, the period for commencing a civil action was extended and the 30-day limit on an employer's liability was eliminated. (Stats. 1965, ch. 825, § 1, p. 2417.) In light of the remaining statutory language which makes an employer liable for the balance of wages wrongfully withheld, the deletion of the 30-day limit on liability suggests an intent on the part of the Legislature to provide complete rather than partial economic redress for wage discrimination.[3]

---

Further, the Legislature has determined that the right to be free of employment discrimination on the basis of sex is a civil right enjoyed by every citizen of this state. Section 1412 provides: "The opportunity to seek, obtain and hold employment without discrimination because of...sex...is hereby recognized as and declared to be a civil right."

In section 1411, the Legislature has declared that "the public policy of this state [is] that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of...sex...."

[3]In cases of economic injury, the general rule is "'that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'" (*Albemarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 418-419 [45 L.Ed.2d 280, 297, 95 S.Ct. 2362].)

Since appellant filed this action within two years of a discriminatory wage payment, she is entitled to recover *all* of the wages earned but wrongfully withheld from her during the period of respondent's discrimination from 1968 to 1974.

### III

Next, this court must decide whether section 1197.5 entitles a successful plaintiff to recover attorney's fees. Appellant contends such entitlement is clear from the language of the entire section and its legislative history. Respondent, on the other hand, maintains that the section grants the trial court discretion in awarding attorney's fees and since there was no abuse of discretion in denying such an award in this case, the trial court's ruling should be affirmed.

Subdivision (g) of section 1197.5 provides that "[a]ny employee receiving less than the wage to which the employee is entitled... may recover in a civil action the balance of such wages, including interest thereon, together with the costs of the suit and reasonable attorney's fees...." This subdivision provides that an employee "may" recover the "balance of such wages" and "reasonable attorney's fees." Consistent with common usage, section 15 provides that in construing provisions of the Labor Code, the use of the word "shall" is mandatory and "may" is permissive. However, as this court recently observed, the use of permissive or mandatory language is indicative but not conclusive of legislative intent. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606]; Lab. Code, § 5 [this section authorizes an exception to the general rule set out in § 15].) Therefore, when ascertaining legislative intent, the context of the statutory language, as well as other indicia of legislative intent, must be carefully considered.

The legislative history of subdivision (g) strongly suggests that the Legislature sought to augment the remedies available to an aggrieved employee by mandating the award of attorney's fees. Prior to 1976, section 1197.5 had no provision for an award of attorney's fees.[4] (See also fn. 1, *ante.*) Among the amendments to section 1197.5 introduced in the Senate on April 17, 1975, was a proposed amendment to subdivision (g)

---

[4]That section provided: "(g) Any employee receiving less than the wage to which he is entitled under this section may recover in a civil action the balance of such wages, together with the costs of suit, notwithstanding any agreement to work for a lesser wage."

to authorize the award of attorney's fees.[5] The language of that amendment, as well as the analysis in the Senate Industrial Relations Committee and the Legislative Counsel's Digest, indicated that the subdivision as amended *mandated* the award of attorney's fees, while permitting the award of court costs. (Sen. Industrial Relations Com., Analysis of Sen. Bill No. 1051 (Apr. 17, 1975) p. 3; Leg. Counsel's Dig. of Sen. Bill No. 1051 (1975-1976 Reg. Sess.).)[6]

When the Assembly subsequently considered the amendments to section 1197.5, a substantive provision was added to subdivision (g) to expand an injured employee's remedies to include the right to recover prejudgment interest on any unpaid wages. Simultaneously, the Assembly amended the entire section to simplify and shorten it. In this process, subdivision (g) was condensed from two sentences to its present wording and enacted into law.

In simplifying the language of subdivision (g), the Assembly deleted the express mandate for attorney's fees by eliminating the word "shall." However, there is no evidence that the Assembly's modification of the Senate amendments was intended to delete the injured employee's important right to attorney's fees.[7] Rather, the Legislative Counsel's

---

[5]The amendment to subdivision (g) as introduced provided: "(g) Any employee receiving less than the wage to which he is entitled under this section may recover in a civil action the balance of such wages, together with the costs of suit, notwithstanding any agreement to work for a lesser wage. The court in any such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee to be paid by the defendant."

[6]The Senate Industrial Relations Committee analysis of the proposed amendment indicated that "[t]he court would be required to award the plaintiff in an action under the equal pay provision a reasonable attorney's fee." The Legislative Counsel's Digest analysis similarly provided that "[t]his bill would require the court in...civil suits to award attorney's fees to the employee."

[7]On the contrary, the general thrust of the amendments adopted by the Assembly was to provide greater protections and remedies for injured employees. This objective is borne out by the Legislative Analyst's summary of the adopted revisions: "1. Permits the division to inspect payrolls and other employment records despite lack of a complaint.... [¶] 2. Allows the division for the first time to bring class action suits in certain cases to enforce these provisions. [¶] 3. Allows any person who has been discriminated against for testifying in any action by the division under this program to bring civil suit or administrative action for recovery of damages. [¶] 4. Requires the division to keep confidential the name of any complaining party. [¶] 5. Extends from 180 days to two years the period in which civil action may be brought.... [¶] 6. Deletes the provision giving the claimant the burden of proof in any civil action regarding sex discrimination." (Leg. Analyst's Analysis of Sen. Bill No. 1051 as amended in the Assembly May 24, 1976 (1975-1976 Reg. Sess.).)

Digest analysis of Assembly amendments indicated an intent to expand and strengthen the remedies provided in section 1197.5 by requiring the award of court costs as well as attorney's fees. Further, despite the change in phraseology in subdivision (g), the Legislative Counsel's analysis continued to indicate that the award of attorney's fees was considered mandatory: "This bill would *require* the court in such civil suits to award attorney's fees and suit costs to the employee." (Leg. Counsel's Dig. of Sen. Bill No. 1051 as amended in Assembly (1975-1976 Reg. Sess.) (italics added).)[8]

The use of the word "may" in subdivision (g) is readily explainable without recourse to respondent's contention that the award of attorney's fees is discretionary. Subdivision (g) specifies one of three avenues of relief created by section 1197.5 for an aggrieved employee.[9] First, subdivision (e) provides that the employee "may" pursue an administrative remedy by filing a complaint with the Division of Labor Standards Enforcement. Second, subdivision (f) provides that the division "may" commence and prosecute a civil action on the employee's behalf, unless otherwise requested by the employee. Third, subdivision (g) provides that an aggrieved employee "may" directly file a civil action without first pursuing an administrative remedy. (*Bass v. Great Western Sav. & Loan Assn.* (1976) 58 Cal.App.3d 770, 773 [130 Cal.Rptr. 123].) Examined in the context of the entire section, the use of the word "may" in subdivision (g) indicates that the remedy provided is but one of several options that an aggrieved employee may pursue. The Legislature did not intend to vest the trial court with discretion in awarding attorney's fees by adopting that subdivision.

---

[8]In considering the legislative significance of the revised language of subdivision (g), it is important to recognize that the mere change in phraseology incident to a revision or amendment of a statute does not result in a change of meaning absent a *clear intent* to make such a change. (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 493 [159 Cal.Rptr. 494, 601 P.2d 1030]; *Hammond v. McDonald* (1942) 49 Cal.App.2d 671, 681 [122 P.2d 332].)

[9]Subdivisions (e) through (g) provide: "(e) Any employee may file a complaint with the division that the wages paid are less than the wages to which the employee is entitled under subdivision (a)....The division shall take all proceedings necessary to enforce the payment of any sums found to be due and unpaid to such employees.

"(f) The department or division may commence and prosecute, unless otherwise requested by the employee or affected group of employees, a civil action on behalf of the employee and on behalf of a similarly affected group of employees to recover unpaid wages under subdivision (a), and in addition to such wages shall be entitled to recover costs of suit....

"(g) Any employee receiving less than the wage to which the employee is entitled under this section may recover in a civil action the balance of such wages, including

This construction of subdivision (g) is reinforced by the provisions of subdivision (b). The latter provides that an employee subject to wage discrimination, prohibited by subdivision (a) of section 1197.5, is entitled to recover the differential in wages with interest. (See fn. 1, *ante.*) The subdivision is drafted in terms which mandate the recovery of interest once a violation of the section is shown. However, under respondent's construction of subdivision (g) there would be no mandatory award of interest because the grant of discretion to award attorney's fees would necessarily extend to the award of interest. This inconsistency is obviated if "may" in subdivision (g) is construed as merely offering an aggrieved employee the option of seeking back wages through a civil action.

The strong policy argument in favor of making an award of attorney's fees in the employment context suggests that the Legislature intended to make the award of such fees mandatory. Given the economic disparity between employer and employee and the high costs of litigation, a prospective defendant in an employment discrimination suit can more readily engage in protracted litigation. If an employee must bear his or her own attorney's fees and costs, this factor may deter the employee from pursuing a meritorious claim. This would fall most heavily on those workers from the lower end of the income scale, who would be pursuing relatively small claims.[10] Surely, the Legislature did not intend such a result.

The mandatory award of attorney's fees to a successful plaintiff encourages the litigation of meritorious wage discrimination suits. This

---

interest thereon, together with the costs of the suit and reasonable attorney's fees, notwithstanding any agreement to work for a lesser wage."

[10]It is unlikely that the Legislature intended to withhold attorney's fees as a means of encouraging an administrative resolution of these claims. Indeed, the amendment to section 1197.5 was in part a response to evidence presented to the Legislature by the Joint Committee on Legal Equality which underscored the internal pressures in administrative agencies which tend to undermine the expeditious processing of employment discrimination complaints. (Joint Rep. on Legal Equality, Women and the California Labor Code (Oct. 16, 1975).) A statement made by the California Fair Labor Practice Commission points up this problem: "The difficulties of dealing with [an] expanded caseload are many indeed. A backlog of uninvestigated cases has built up, and is growing in size as incoming cases mount. We estimate that on backlogged cases it will take us nearly a year from date of filing before we are able to assign a consultant to open an investigation. Unhappily, this is disadvantageous to the complainant. But Commission consultants now carry over 100 open cases a year, compared to a consultant caseload of less than 50 about eight years ago, and under present budget limitations the man-and-woman-power is simply not available to handle matters as quickly as they should be handled to obtain the best resolution." (*Id.*, at p. 5, appen. A-113.)

increases the effectiveness of the civil suit as a tool to combat employment discrimination. That was the intent of the Legislature when it enacted these sections. Therefore, attorney's fees should have been awarded under subdivision (g).

## IV

The trial court erred when it denied appellant recovery for the full amount of the back wages which had been withheld from her due to respondent's discriminatory practices. Further, in keeping with the Legislature's intent in enacting section 1197.5, subdivision (g), appellant's attorney's fees should have been awarded to her. The orders of the trial court should be reversed.

Appellant's petition for a rehearing was denied June 25, 1980, and the opinion was modified to read as printed above.